UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
GUANGLEI JIAO, NAN YU, RUIJI ZHAI and  :
YANJUN LI,                                               :
                                                             :
                    Plaintiffs,                          :
                                                             :
          -against-                                      :
                                                             :
SHANG SHANG QIAN INC., YUAN YUAN  :
WU a/k/a/ ANDY WU, ZHAORUI FAN, DAN  :
WU a/k/a STEPHY WU, MEILING ZOU a/k/a  :
DENISE ZOU, CHULAIZHADAO INC., and   :
SONG YUE JIN,                                        :
                                                             :
                    Defendants.                         :
------------------------------------------------------------ X

**REPORT AND
RECOMMENDATION**

18 Civ. 5624 (HG) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

This is an action to recover damages for alleged violations of the Fair Labor Standards

Act, 29 U.S.C. §§ 201 et seq., and the New York Labor Law, N.Y. Lab. L. §§ 190 et seq.; 650 et

seq. and the corresponding New York regulations (the "NYLL"), and the New York Debtors &

Creditors Law, N.Y. Debt. & Cred. L. § 273 (the "NYDCL").  Before the Court on referral from

the District Court is Plaintiffs' motion for summary judgment as to the liability of pro se

Defendant Zhaorui Fan ("Mr. Fan") only, pursuant to Federal Rule of Civil Procedure ("Rule")

56, on the docket at ECF No. 155.  For the reasons set forth below, the Court respectfully

recommends that Plaintiffs' motion be granted in part and denied in part.

First, the Court respectfully recommends that a summary declaration be entered against

Mr. Fan that Mr. Fan was Plaintiffs' employer for the purposes of the FLSA and the NYLL, and

that Mr. Fan did not pay Plaintiffs overtime premiums under the FLSA and the NYLL, the

minimum wage under the NYLL, and spread-of-hours premiums under the NYLL, as detailed

below.  Second, the Court respectfully recommends that Plaintiffs' motion for summary

1

judgment as to their wage-and-hour claims and their retaliation claims against Mr. Fan be denied. Third, the Court respectfully recommends that Plaintiffs be ordered to show cause as to why they have standing to bring their wage-notice and wage-statement claims and why such claims should not be dismissed within 30 days of the adoption of this report and recommendation, should it be adopted.

### I.    BACKGROUND

This litigation spans several years and includes separate, related proceedings both in this Court and in the United States Bankruptcy Court for the Eastern District of New York.  The Court assumes the parties' familiarity with the factual background and procedural history, and it will only recite the facts of this case that are relevant to the instant motion.

### A.    Factual Background

The following facts are taken from Plaintiffs' motion papers and the accompanying exhibits, which include the Bankruptcy Court's memorandum decision in the related adversary proceeding in United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Adversary Proceeding") at In Re Fan, 656 B.R. 666 (E.D.N.Y. 2024).  All facts are undisputed unless stated otherwise and, when indicated, are attributed to Plaintiffs' testimonies at trial in the Bankruptcy Adversary Proceeding.

Plaintiffs Guanglei Jiao ("Mr. Jiao"), Nan Yu ("Mr. Yu"), Ruiji Zhai ("Mr. Zhai") and Yanjun Li ("Ms. Li") each formerly worked at Defendant Shang Shang Qian ("SSQ"), a Chinese restaurant in Flushing, New York.  See Fan, 656 B.R. at 672, 683.  Defendants Yuan Yuan Wu a/k/a/ Andy Wu ("Mr. Wu"), Dan Wu a/k/a Stephy Wu ("Ms. Wu"), Meiling Zou a/k/a Denise Zou ("Ms. Zou") and Mr. Fan (collectively, the "Original Individual Defendants") all "owned [SSQ] or are alleged to have managed [SSQ] or asserted control over [SSQ's] workers or their

2

wages." Id. at 671.

Plaintiffs all testified during the Bankruptcy Adversary Proceeding that they worked long hours for low pay at SSQ. Specifically, Mr. Jiao testified that he worked at SSQ from May 31, 2017 to September 21, 2018. See id. at 674. Mr. Jiao testified that he was scheduled to work from 3:00 PM to 2:00 AM six days per week, although he "usually worked" seven days per week, and from 2:45 PM to 3:00 AM the next day; furthermore, Mr. Jiao testified that his schedule changed in 2018, from which point on he worked from 3:00 PM to "past 3:00 AM to clean and process food." Id. at 675. Mr. Jiao also testified that he initially earned $3,000 per month, although in 2018, his monthly wage was raised to $3,200. See id. at 674-75. Mr. Jiao testified that he never received information as to "what should happen if he worked more than forty hours a week" and "what should happen if he worked more than ten hours a day." Id. at 674.

Ms. Li testified that she worked at SSQ "from June or August 2016 until September 21, 2018." Id. at 676. From June 2016 to July 2016, Ms. Li testified, she worked from five days per week, from 2:00 PM to 2:00 AM. See id. She also testified that she began to work seven days per week beginning in August 2016, from 3:00 PM to 2:00 AM, then from 4:00 PM to 3:00 AM. See id. Ms. Li testified that she was paid $8 per hour at the beginning of her employment, without tips, that she received a raise to $9 per hour in January 2017, and that she received only tips in lieu of any hourly wage beginning in August 2018. See id. at 676-77. Ms. Li testified that she "was paid her hourly rate for every extra hour worked over ten hours[,]" and that she did not receive any information about minimum wages or "what should happen with her wages if she worked more than ten hours a day." Id. at 676.

Mr. Zhai testified that he worked at SSQ "from June of 2017 until September 21, 2018."

Id. at 677.  Mr. Zhai testified that "was expected to work seven days per week[,]" that he originally was scheduled to work from 3:00 PM to 2:00 AM, and that beginning in 2018, Mr. Zhai's hours were "from 4:00 [PM] to 3:00 [AM], seven days a week." Id. at 678.  Mr. Zhai also testified that he was originally paid $70 per day, although his pay eventually increased to $95 per day.  See id. at 677.  Mr. Zhai testified that he never received any information about minimum wages, "what should happen if he left work more than ten hours after arriving[,]" or that he "should be paid time and a half when he worked more than forty hours per week." Id. at 677-78.

Mr. Yu testified that he worked at SSQ "from September 8, 2016 until September 21, 2018." Id. at 679.  Mr. Yu testified that he "was scheduled to work from 3:00 [PM] to 2:00 [AM,]" and that his schedule changed in February 2018 so he worked from 4:00 PM to 3:00 AM. Id.  Mr. Yu testified that he would frequently "have to go to the supermarket to make purchases for the restaurant" prior to the beginning of his shifts, and that he often "would work after his shift ended for about a half hour to an hour, and on occasion he would stay until dawn." Id.  For this work, Mr. Yu testified, he initially earned $70 per day, although his daily rate increased until it eventually reached $110.  See id.  Mr. Yu also testified that he never received information about "the minimum wage law[,]" "what should happen if [Mr.] Yu worked more than forty hours per week" or "what should happen if [Mr.] Yu worked more than ten hours per day." Id.

Plaintiffs also all testified during the Bankruptcy Adversary Proceeding that Mr. Fan spoke with them concerning this lawsuit.  After Plaintiffs ceased working at SSQ, and at some point after this action was filed "but before the COVID-19 Pandemic[,]" Mr. Jiao testified that Mr. Fan offered Mr. Jiao money to withdraw this instant action and threatened Mr. Jiao that Mr. Fan "would pay more than necessary to fight the case and [Mr.] Jiao would not get a single penny." Id. at 675.  According to Mr. Jiao, Mr. Fan also threatened that "[Mr. Wu] said he

would make sure [Mr.] Jiao is a 'lost person' if [Mr.] Jiao did not stop the lawsuit[,]" which Mr. Jiao took "to mean he would be killed."  Id.  In February 2019, Ms. Li testified that Mr. Fan visited her at her new place of employment and said "he and [Mr. Wu] could arrange for her to work at another restaurant."  Id. at 677.  Ms. Li also testified that Mr. Fan told her that she would "not be successful" in the instant action and if this action "did not stop, some news would break about a 'murder case' in Flushing."  Id.  Mr. Zhai testified that Mr. Fan had once told him "that when his case is over, he would make sure [Mr. Jiao] disappeared and [Ms. Li] would be in jail." Id. at 678.   Mr. Yu testified that Mr. Fan approached Mr. Yu at his new place of employment, and told him, "you should know the power of boss Andy [meaning Mr. Wu]" and "explained that if it were not for [Mr. Fan], Plaintiffs would have already 'disappeared.'"  Id. at 679.

### B.    Procedural History

The procedural history is set forth in some detail in the report and recommendation on Mr. Fan's motion to dismiss, filed on the docket at ECF No. 169, but is included here for ease of reference.

### 1.    The Original Proceeding As To The Original Defendants

Plaintiffs initially filed this action on October 9, 2018, as a putative class and collective action[1] against SSQ, Mr. Wu, Mr. Fan, Ms. Wu and Ms. Zou (collectively, the "Original Defendants"), alleging minimum-wage violations under the FLSA and the NYLL, overtime violations under the FLSA and the NYLL, spread-of-hours violations under the NYLL, unlawful

---

[1] Although filed as a putative class action, Plaintiffs only moved for conditional collective action certification, which was granted, see ECF No. 88, but not for class certification.  No one opted into the collective action, other than the named Plaintiffs.  See ECF No. 169.  The Court will therefore review the parties' summary judgment motion only as it pertains to the original plaintiffs in this action.  See 29 U.S.C. § 216(b); Ward v. Bank of New York, 455 F. Supp. 2d 262, 267 (S.D.N.Y. 2006) ("If no additional plaintiffs opt in to the lawsuit, the FLSA § 16(b) plaintiff advances only her own individual claims.").

tip retention under the FLSA and the NYLL, failure to provide meal breaks under the NYLL, and wage-notice, wage-statement and payroll records violations under the NYLL.  See generally ECF No. 1.  Although the Original Defendants initially answered the complaint, see ECF No. 28, their answer was stricken after the Original Defendants' original counsel withdrew their representation and the Original Defendants failed to timely obtain new counsel or otherwise participate in this action.  See ECF Nos. 36, 40, 58, 62 (adopting report & recommendation). The Clerk of Court entered a certificate of default against the Original Defendants after their original answer was stricken.  See ECF No. 63.

After the default certificate against the Original Defendants was entered, Defendants obtained counsel again and moved to vacate the entry of default.  See ECF No. 65.  The Court granted the Original Defendants' motion, permitted Plaintiffs to file an amended complaint and set a discovery schedule.  See 10/13/2020 Order.  Plaintiffs filed an amended complaint alleging the same causes of causes of action, against the same Defendants, as the original complaint, which Original Defendants answered.  See ECF Nos. 67 & 69.

### 2. The Original Individual Defendants File For Bankruptcy

Less than two months after Defendants answered the amended complaint, counsel for Original Defendants informed Plaintiffs that the Original Defendants had obtained bankruptcy counsel and intended to file a bankruptcy petition.  See ECF No. 71-1.  Mr. Wu, Ms. Wu, Ms. Zou and Mr. Fan (the "Original Individual Defendants") filed for Chapter 7 Bankruptcy Protection in United States Bankruptcy Court for the Eastern District of New York three days later (the "Bankruptcy Proceeding"), which automatically stayed proceedings as to the Original Individual Defendants.  See ECF No. 72.  The Bankruptcy Court later lifted the automatic stay as to the Original Individual Defendants.  See ECF No. 76.

The Bankruptcy Proceeding continued, and on May 11, 2021, the Original Defendants'

second counsel asked the Court's permission to withdraw from representation, as the Original

Defendants informed their counsel that "they intend to concentrate their efforts on their

bankruptcy case and will not further defend the litigation in this Court."  ECF No. 79 at 1.  This

motion to withdraw also stated that SSQ "has been defunct since 2019 and no individual exists to

act on [its] behalf."  Id.  After the Court granted Original Defendants' second counsel's motion

to withdraw, see 6/9/2021 Order, the Original Individual Defendants proceeded pro se.  See ECF

No. 85; 7/14/2021 Order; 9/14/2021 Order; 12/16/2021 Order.  The Original Individual

Defendants continued to be represented by counsel in the Bankruptcy Proceeding.  See ECF No.

84.

### 3.    The Filing And Consolidation Of The Successor Action

Three months after the Original Defendants' second counsel withdrew from the instant

litigation, Plaintiffs filed a separate action in this District against Defendant Chulaizhadao Inc.

("Chulaizhadao"), alleging that Chulaizhadao is liable as a successor in interest to SSQ for

SSQ's alleged violations of the FLSA and the NYLL (the "Successor Action").  See Jiao et al v.

Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), ECF No. 1 (E.D.N.Y. Sept. 7, 2021).

Plaintiffs filed an amended complaint in the Successor Action two months later adding Lee

Union Street, LLC; Chihyon Lee a/k/a Sandra Lee; Paul Lee; Ki-Chang Lee and Soon-Ri Lee

(collectively, the "Lee Defendants") and Song Yue Jin ("Ms. Jin") as Defendants and adding a

cause of action for alleged fraudulent transfer of assets in violation of the NYDCL.  See

generally Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), ECF No. 7 (E.D.N.Y.

Nov. 17, 2021).

The Court directed Plaintiffs to "file a notice of related case on the docket" in this

7

litigation as to the Successor Action.  See 12/16/2021 Order.  Plaintiffs filed a notice of related

case as to the Successor Action one month later.  See ECF No. 89.  Following a conference, the

Court set a schedule to commence joint discovery for both this action and the Successor Action.

See 1/21/2022 Order.

　　　　After the Court set an initial joint discovery schedule, Plaintiffs moved for leave to

supplement the amended complaint to add claims of retaliation in violation of the FLSA and the

NYLL against Mr. Wu and Mr. Fan.  See ECF No. 92.  The Court granted Plaintiffs' motion in

part, permitting Plaintiffs to supplement the amended complaint to add retaliation claims and

directing Plaintiffs to file a proper supplemental complaint, as Plaintiffs' proposed supplemental

complaint was filed not as a supplement, but a proposed second amended complaint.  See ECF

Nos. 94, 92-2, 92-3.  Plaintiffs filed a proposed supplemental complaint one week later.  See

ECF No. 95-1.

　　　　After Plaintiffs submitted their proposed supplemental complaint in this action on Order

from the Court, Chulaizhadao filed a motion in the Successor Action to consolidate this litigation

with the Successor Action.  See Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS),

ECF No. 35 (E.D.N.Y. Aug. 12, 2022).  The Court granted Chulaizhadao's motion, consolidated

the Successor Action into this action, and directed Plaintiffs in this action to file a consolidated

amended complaint.  See ECF No. 98.

　　　　On November 29, 2022, Plaintiffs filed a consolidated complaint in this action against the

Original Defendants, Chulaizhadao, Ms. Jin and the Lee Defendants.  See ECF No. 101.

Approximately one week later, Plaintiffs filed an amended consolidated complaint ("ACC"),

dismissing the claims against the Lee Defendants, as the District Court had previously dismissed

the Lee Defendants from the Successor Action.  See ACC, ECF No. 104; Jiao et al v.

Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), ECF No. 41 (E.D.N.Y. Sept. 7, 2022).  The

Clerk of Court closed the Successor Action following the consolidation of the Successor Action

with this action.  See Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), 11/30/2022

Dkt. Entry (E.D.N.Y. Nov. 30, 2022).

 Against the Original Defendants and Chulaizhadao, Plaintiffs allege in the ACC

minimum-wage violations under the FLSA and the NYLL, overtime violations under the FLSA

and the NYLL, spread-of-hours violations under the NYLL, unlawful tip retention under the

FLSA and the NYLL and wage-notice and wage-statement violations under the NYLL.[2]  See

ACC ¶¶ 164-207.  Against Mr. Wu and Mr. Fan, Plaintiffs allege unlawful retaliation in violation

of the FLSA and the NYLL.  See id. ¶¶ 208-19.  Against all Defendants, Plaintiffs allege

fraudulent transfer in violation of the NYDCL.  See id. ¶¶ 220-26.

 Chulaizhadao filed a pre-motion conference letter seeking permission to move to dismiss

the ACC.  See ECF No. 107.  The Court declined to stay discovery pending the outcome of a

motion to dismiss and amended the discovery schedule as to all parties.  See 1/18/2023 Order.

The District Court set a briefing schedule on Chulaizhadao's motion in a separate Order, see

1/19/2023 Order, and Chulaizhadao filed its motion to dismiss on March 2, 2023.  See ECF No.

115.  Following the submission of Chulaizhadao's motion to dismiss, the Court directed counsel

for Chulaizhadao to "clarify" whether the motion to dismiss the ACC is "filed on behalf of

Chulaizhadao alone, or whether the [Original] Individual Defendants and Defendant Jin have

joined in this motion."  8/9/2023 Order.  The District Court also directed counsel for the

remaining Defendants to state whether they joined Chulaizhadao's motion.  See id.

---

[2] Plaintiffs do not include allegations of meal-period and record-keeping violations in the ACC, even though such allegations had been included in their first amended complaint.  See ECF No. 67; ACC ¶¶ 164-207.

Counsel for Chulaizhadao's letter in response stated that he represented Ms. Jin "for purposes of this motion [to dismiss]" and that "the attorney for [the Original Individual Defendants] informed me that they wish to join in this motion."[3]  ECF No. 125.  This letter statement conflicted with bankruptcy counsel's statement as to the Original Individual Defendants.  See id. at 2.  None of the Original Individual Defendants joined Chulaizhadao's motion to dismiss; rather, the Original Individual Defendants, through their bankruptcy counsel, requested that their deadline to answer the ACC be stayed pending the Bankruptcy Proceedings, with the "opportunity to respond" to the ACC "[i]n the event that the debts are deemed non-dischargeable[.]"  ECF No. 122.  The District Court did not construe Chulaizhadao's motion to dismiss to be filed on behalf of the Original Individual Defendants.

### 4.    The Bankruptcy Adversary Proceeding And Its Resolution

The Bankruptcy Proceeding continued alongside this litigation.  In the January 2023 conference setting an amended discovery schedule, "Plaintiffs' counsel updated the Court that there [would] be a hearing on the dischargeability of any debt that might be identified in this action in the District Court (regarding [Mr. Wu], [Mr. Fan], [Ms. Wu] and [Ms. Zou])."  1/18/2023 Order.  The Bankruptcy Court held a trial in the related Bankruptcy Adversary Proceeding as to the dischargeability of the Original Individual Defendants in the Bankruptcy Proceeding on March 28 and 29, 2023.  See ECF No. 116.  Following the trial, the parties filed post-trial briefs in the Bankruptcy Adversary Proceeding.  See ECF Nos. 116, 122, 126.

---

[3] Counsel for Chulaizhadao appears to be mistaken as to whether the Original Individual Defendants are represented in this action.  Counsel appears to have spoken with the Original Individual Defendants' counsel for the Bankruptcy Proceeding, rather than for this action.  See ECF Nos. 72 & 125; 6/9/2021 Order.  The Original Individual Defendants' second counsel in this action withdrew their representation in June 2021, see 6/9/2021 Order, and no subsequent counsel has filed a notice of appearance on the docket as to the Original Individual Defendants.

The parties continued to conduct discovery, and to seek Court relief for discovery disputes, while the Bankruptcy Adversary Proceeding remained pending.  See ECF Nos. 123, 124, 127, 128, 130.  The Court ordered that discovery be closed on October 24, 2023, and for dispositive motion practice to begin November 20, 2023.  See 9/5/2023 Order.  The parties were ordered to conduct one deposition after the close of discovery, see 11/16/2023 Order, and they were granted an extension to commence dispositive motion practice.  See ECF No. 132; 12/18/2023 Order.

On January 3, 2024, the United States Bankruptcy Court for the Eastern District of New York issued a decision as to the Bankruptcy Adversary Proceeding.  See Fan, 656 B.R. at 666. The Bankruptcy Court found that Plaintiffs' claims against Mr. Fan were nondischargeable under Section 523(a)(6) of the United States Bankruptcy Code, as Mr. Fan acted "with malice" and "contrary to commonly accepted duties of an employer" when he "(i) scheduled his employees to work no less than 11[-]hour shifts for six or seven days a week without paying the minimum wage or overtime[.]"  Id. at 671, 683-84.  The Bankruptcy Court also found that Plaintiffs' claims against Mr. Wu, Ms. Wu and Ms. Zou were dischargeable, and the Bankruptcy Court denied Plaintiffs in this action a judgment as to their claims.  See id. at 671, 690.  The Bankruptcy Court permitted Plaintiffs to "proceed in the FLSA Action against [Mr.] Fan to liquidate their claims (including attorneys' fees) and to obtain and enforce any money judgment."  Id. at 690.

Following the resolution of the Bankruptcy Adversary Proceeding, Plaintiffs filed a letter informing the Court that they "cannot continue" this action against Mr. Wu, Ms. Wu and Ms. Zou, but that they could continue their claims against Mr. Fan.  ECF No. 133.  The District Court ordered Plaintiffs to dismiss Ms. Wu, Mr. Wu and Ms. Zou as Defendants, in light of the

11

resolution of the Bankruptcy Adversary Proceeding.  See 2/3/2024 Order.

Although Plaintiffs initially filed a motion to strike the Original Individual Defendants'

answer, see ECF No. 136,[4] Plaintiffs eventually moved to dismiss Mr. Wu, Ms. Wu and Ms.

Zou, see ECF No. 140.  Mr. Wu, Ms. Wu and Ms. Zou were dismissed as parties on February 15,

2024, leaving SSQ, Mr. Fan, Chulaizhadao and Ms. Jin as the only remaining Defendants in this

action.[5]  See 2/15/2025 Order.  In his opposition papers to Plaintiffs' motion to strike the

Original Individual Defendants' answer, Mr. Fan also moved to dismiss the ACC pursuant to

Rule 12.  See Fan Decl., ECF No. 141.

### 5.   The Parties' Dispositive Motion Practice

After Mr. Wu, Ms. Wu and Ms. Zou were dismissed, the parties began dispositive motion

practice.  Mr. Fan, proceeding pro se, filed a letter stating his dual intent to move for summary

judgment and to dismiss the ACC along the same grounds as his previously filed letter.  See ECF

No. 146.  Chulaizhadao and Ms. Jin (collectively, the "Successor Defendants") filed a pre-

motion letter stating their intent to move for summary judgment on the grounds that Plaintiffs

lacked successor liability and liability pursuant to the NYDCL against them.  See ECF No. 143.

---

[4] It is not clear to the Court why Plaintiffs' motion to strike the Original Individual Defendants' answer references the answer filed at ECF No. 28, which the District Court already struck, and which was not entered in response to the operative pleading in this action.  See ECF Nos. 62, 67, 69, 101, 104.

[5] As the District Court noted, SSQ never obtained counsel or participated in this action since the Original Defendants' second counsel withdrew their representation.  See, e.g., 6/9/2021 Order; 4/15/2024 Order.  After nearly three years passed since SSQ's last participation in this action, the District Court ordered SSQ to obtain counsel, and, if SSQ failed to do so, directed Plaintiffs to request a certificate of default as to SSQ.  See 4/15/2024 Order; 5/7/2024 Order.  Plaintiffs requested a certificate of default one week later, and the Clerk of Court entered it against SSQ on June 3, 2024.  See ECF Nos. 145 & 148.  In a subsequent letter, Plaintiffs requested to refrain from filing a default judgment motion as to SSQ until "after the trial between [Plaintiffs] and [the] defendants that are currently in the case."  ECF No. 149.  SSQ remains unrepresented and unresponsive in this action.

Plaintiffs filed letters withdrawing their motion to strike Mr. Fan's answer and instead seeking to move for summary judgment against Mr. Fan, based on the Bankruptcy Adversary Proceeding. See ECF Nos. 151 & 152. The District Court found Plaintiffs' motion to strike Mr. Fan's answer to be moot. See 6/25/2024 Order.

Upon receipt of the parties' letters, the District Court set a briefing schedule for the summary-judgment motions of the Successor Defendants, Mr. Fan and Plaintiffs. See ECF No. 154. Plaintiffs and the Successor Defendants filed their respective summary-judgment motions. See Pls.' Mot., ECF No. 155; ECF No. 161. The District Court referred the parties' motions to the undersigned for a report and recommendation. In a subsequent Order, the District Court stated that it would "treat [Mr. Fan's] premotion conference letter as the motion [to dismiss and for summary judgment] itself." 11/7/2024 Order.

On the deadline to file reply briefs with the Court, and over one month after the deadline to file opposition papers, Plaintiffs filed their opposition papers to Mr. Fan's motion. See 10/21/2024 Order; ECF Nos. 164 & 165. That same day, the Successor Defendants filed a motion asking the Court that "Plaintiffs' opposition papers . . . not be considered" as they were filed past the Court's deadline. ECF No. 167. The Court will address the Successor Defendants' letter in a separate report and recommendation. In this report and recommendation, the Court addresses only Plaintiffs' motion for relief at ECF No. 155.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

13

Catrett, 477 U.S. 317, 323 (1986).  If the moving party bears the burden of proof at trial, "its own submissions in support of the motion must entitle it to judgment as a matter of law." Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998).  To meet this burden, the moving party must "lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing."  10A Wright & Miller's Fed. Practice & Procedure § 2727.1 (4th ed. 2025).  If the moving party meets this initial burden, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation & quotation marks omitted) (emphasis in original).  Consequently, evidence submitted at the summary-judgment stage must be capable of being "presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  At the summary-judgment stage, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Williams v. New York City Hous. Auth., 61 F.4th 55, 72 (2d Cir. 2023) (quotation & emphasis omitted).

A district court enjoys wide discretion to set the scope of the record that it will consider in a summary-judgment motion.  For example, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary[-]judgment motion, it is not required to consider what the parties fail to point out." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) (quotation omitted).  This discretion is not unlimited, however, as a court may not grant a summary-judgment motion simply because the motion is unopposed.  "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to

14

judgment as a matter of law." <u>Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 242 (2d Cir. 2004).  The court must still determine whether the moving party "has met its burden of demonstrating that no material issue of fact remains for trial and that the citation to evidence in the record supports the unopposed assertion" and "whether the legal theory of the motion is sound." <u>Jackson v. Fed. Exp.</u>, 766 F.3d 189, 194 (2d Cir. 2014) (citations, quotation marks & internal brackets omitted).

A party who does not oppose a summary-judgment motion risks losing an opportunity to dispute the facts asserted by the moving party.  Courts in this District require, as part of a party's summary judgment moving papers, "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a).  These factual statements, supported with citations to the record, "will be deemed to be admitted for the purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civ. R. 56.1(c); <u>see</u> Local Civ. R. 56.1 (d).  "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." <u>T.Y. v. New York City Dep't of Educ.</u>, 584 F.3d 412, 418 (2d Cir. 2009).  As such, when a summary-judgment motion is not opposed, the non-moving party chooses "the risky and imprudent path of relying solely on [the moving party's] failure to meet its burden of production." <u>Vermont Teddy Bear</u>, 373 F.3d at 247.

A summary-judgment motion by or against a <u>pro se</u> party involves additional protections, as a court is "less demanding of such litigants generally, particularly where motions for summary judgment are concerned." <u>Jackson</u>, 766 F.3d at 195; <u>see</u> <u>Ruotolo v. I.R.S.</u>, 28 F.3d 6, 8 (2d Cir.

1994) ("Recognizing that the [plaintiffs] were acting pro se, the district court should have offered

them special solicitude before granting the [defendant]'s motion for summary judgment.").  For

example, as part of the "special solicitude," pro se parties enjoy "liberal construction of

pleadings, motion papers and appellate briefs[,]" as well as "leniency in the enforcement of . . .

procedural rules[.]"  Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases); see

Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and

briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments

they suggest." (citations & quotation marks omitted)).  Parties who move for summary judgment

against a pro se litigant must also "serve and file" certain papers on the pro se non-movant.

Local Civ. R. 56.2.

## III.    DISCUSSION

Plaintiffs argue that summary judgment should be granted against Mr. Fan because the

Bankruptcy Adversary Proceeding created "no genuine issue of material fact as to whether

Zhaorui Fan was [Plaintiffs'] employer and that he failed to pay [P]laintiffs within the provisions

of the FLSA and the NYLL[.]"  Pls.' Mem. L. at 6-7, ECF No. 157.  In the alternative, Plaintiffs

argue that under the doctrine of collateral estoppel, the findings in the Bankruptcy Court

Adversary Proceeding regarding Plaintiffs' "claims that they were not compensated under the

FLSA and NYLL and that [Mr. Fan] retaliated against them for filing a lawsuit in the Eastern

District Court of New York" should be given preclusive effect.  Id. at 9.  As Mr. Fan and SSQ

never filed opposition papers to Plaintiffs' motion, the Court will consider it to be unopposed.

The Court will first examine whether collateral estoppel applies to Plaintiffs' claims that

Mr. Fan was Plaintiffs' employer, and that he did not pay Plaintiffs, and, if so, whether the Court

may then grant summary judgment to Plaintiffs for their wage-and-hour claims.  The Court will

16

then address whether collateral estoppel applies to Plaintiffs' retaliation claim.

A.    **Legal Standard**

1.    **Collateral Estoppel**

"The doctrine of offensive collateral estoppel allows a plaintiff to preclude a defendant from relitigating an issue that has been previously decided against the same defendant." Flood v. Just Energy Marketing Corp., 904 F.3d 219, 236 (2d Cir. 2018). In order to "establish the preclusive effect of a prior federal judgment,"[6] courts apply "[f]ederal principles of collateral estoppel," namely whether

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (citing Purdy v. Zeldes, 337 F.3d 253, 258 n.5 (2d Cir. 2003)). When collateral estoppel is used offensively, a court must also determine whether the use is fair. See Flood, 904 F.3d at 236.

In order to satisfy the identity-of-issues requirement, "it is not necessary that the issues be exactly identical; it is sufficient that the issues presented in the earlier litigation are substantially the same as those presented by the later action." Zherka v. City of New York, 459 F. App'x 10, 13 (2d Cir. 2012) (citation, quotation marks & internal brackets omitted) (summary order). Nevertheless, "issues are not identical when the legal standards governing their resolution are significantly different." Computer Assocs. Intern., Inc. v. Altai, Inc., 126 F.3d 365, 371 (2d Cir. 1997).

As to the second and third requirements, an issue may be considered actually litigated if it

---

[6] An order from the United States Bankruptcy Court is considered a prior federal judgment for the purposes of asserting collateral estoppel. See, e.g., Carney v. Philippone, 332 F.3d 163, 169-70 (2d Cir. 2003); Cerny v. Rayburn, 972 F. Supp. 2d 308, 315-16 (E.D.N.Y. 2013).

was "properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006) (citations omitted). A party had a full and fair opportunity to litigate that issue if said party "'was fully able to raise the same factual or legal issues' in the prior litigation as those asserted in the present case." Cerny, 972 F. Supp. 2d at 319 (quoting LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002)).

The fourth requirement for collateral estoppel, necessity to support a final judgment on the merits, "assures that matters that were ancillary to the first determination, and matters that were not finally determined, will not be invoked to bar the consideration of a disputed issue by the second court." In re Qiao Lin, 576 B.R. 32, 48-49 (E.D.N.Y. 2017).

As to a fairness consideration, offensive collateral estoppel may be unfair to a defendant if the plaintiff in the first proceeding sought a substantially smaller amount of damages than the second proceeding, if "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant[,]" or if "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 330-31 (1979).

### 2.    Wage-and-hour Violations Under The FLSA And NYLL

### a.    FLSA And NYLL Wage-And-Hour Protections

Both the FLSA and the NYLL entitle covered employees to hourly premiums for overtime work and statutory minimum wages. The FLSA requires an employee to "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week[.]" Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); see 29 U.S.C. § 207(a). New York offers employees similar protections. Regulations promulgated under the NYLL require employers in the

hospitality industry to "pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.4.  As to wages, for the periods of 2016-2018, the hourly minimum wage under the FLSA was $7.25.  See 29 U.S.C. § 206(a)(1)(C).  In Queens County, New York, where SSQ was located and Plaintiffs worked, the minimum wage during 2016-2018 ranged from $9.00 to $15.00, depending on the year and the size of the employer.  See N.Y. Lab. L. § 652(1)(a).  If a state-law minimum wage is higher than the federal minimum wage, the FLSA requires that employers pay the higher minimum wage of the state.  See 29 U.S.C. § 218(a).

If an employee works certain long hours at below minimum-wage rates, under New York law, that employee may qualify for extra protections.  The NYLL entitles employees who earn the minimum wage or less to earn an additional hour of pay, at the minimum wage, for each day during which the employee works more than ten hours.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.

### b.     Coverage Under The FLSA And NYLL

By law, not every worker enjoys these statutory entitlements.  The FLSA only protects employees from wage-and-hour and minimum-wage violations of "employers."  See 29 U.S.C. §§ 206-07.  The test for determining status as an employer under the FLSA is broad, as it focuses on the "economic reality" of the putative employment relationship; consequently, more than one entity can be an "employer" at once.  See Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 66-67 (2d Cir. 2003).  Courts in the Second Circuit use four factors to determine whether an entity is an "employer" under the economic-reality test, namely, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or

19

conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

Although the Second Circuit has not definitively ruled on whether the NYLL and the FLSA apply the same tests for an employer or a joint employer, see Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013); Perez Perez v. Escobar Construction, Inc., No. 23-1240 Civ., 2024 WL 3594325, at *2 n.3 (2d Cir. July 31, 2024) (summary order), the Second Circuit "construe[s] the NYLL definition [of an employee] as the same in substance as the definition in the FLSA." Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 534 (2d Cir. 2016)).  District courts within the Second Circuit have "interpreted the definition of 'employer' under the [NYLL] coextensively with the definition by the FLSA." Napoli v. 243 Glen Cove Ave. Grimaldi, Inc., 397 F. Supp. 3d 249, 263-64 (E.D.N.Y. 2019) (collecting cases) (analyzing the plaintiff's FLSA and NYLL claims "under the same standard"); Winfield v. Babylon Beauty Sch. of Smithtown Inc., 89 F. Supp. 3d 556, 570 (E.D.N.Y. 2015).  For the purposes of this motion, any distinction between the FLSA and the NYLL's definition of employer would make no difference to the recommendations in this report.

A defendant's status as an employer is not the only requirement for a plaintiff to qualify for FLSA and NYLL protections.  For example, coverage under the FLSA only applies if an employee is either "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a).  These types of coverage are respectively called "individual coverage" and "enterprise coverage[.]" Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96

(2d Cir. 2009).  Under the FLSA, an employer qualifies for enterprise coverage if it

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1).  Both the FLSA and the NYLL also exempt certain kinds of employees from receiving statutory protections.  See 29 U.S.C. § 213; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14.

### c.    Standing For Informational Injuries Under The NYLL

Plaintiffs bringing claims in federal court for alleged failures to provide wage notices and wage statements under the NYLL face additional hurdles before they can establish standing to sue.  In order to "have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm."  TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021).  Issues of standing "go[] to [a court's] subject matter jurisdiction" and "can be raised sua sponte."  Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 198 (2d Cir. 2005).

The Second Circuit has held that in order to sustain a claim for wage-notice and wage-statement violations in federal court, "a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements[.]"  Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302-03 (2d Cir. 2024).  This concrete injury must also have a "causal connection" to the alleged statutory violations.  Id. at 308.  Otherwise, NYLL wage-notice and wage-statements claims must be dismissed for lack of standing.  See id. at 303, 311.

### 3.    Retaliation Under The FLSA

The FLSA makes it "unlawful for any person . . . to discharge or in any other manner

discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under the FLSA.  29 U.S.C. § 215(a)(3).  Under the NYLL, an employer may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" for engaging in certain protected activities under the Labor Law.  N.Y. Lab. L. § 215(1)(a).[7]

The FLSA and the NYLL apply the same standards to retaliation claims.  FLSA and NYLL retaliation claims are both analyzed under the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[8]  See Williams v. Harry's Nurses Registry, Inc., No. 24-34 Civ., 2025 WL 842041, at *3 (2d Cir. Mar. 18, 2025) (summary order); Velazquez v. Yoh Servs., LLC, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order); Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010) (FLSA); Rosenbaum v. Meir, 658 F. Supp. 3d 140, 149 (E.D.N.Y. 2023) (NYLL).  Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie retaliation case, defined as 1) protected activity; 2) a defendant's knowledge of the protected activity; 3) an adverse-employment action; and 4) a causal connection between the protected activity and the adverse-employment action.  See Mullins, 626 F.3d at 53.  Once the plaintiff meets this burden, the defendant must then articulate a "legitimate, non-discriminatory reason for the employment action." Id. (quotation omitted).  If the defendant meets this burden, the plaintiff must demonstrate that the defendant's

_____

[7] The Court need not address here whether the retaliation laws apply to conduct taken after the employer-employee relationship has concluded, as was the case here.

[8] The United States Supreme Court recently had the opportunity to examine the opportunity to alter the application of the McDonnell Douglas framework for cases arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), but it has declined to do so.  See Hittle v. City of Stockton, California, 145 S. Ct. 759 (Mem) (2025); Ames v. Ohio Dep't of Youth Servs., 605 U.S. 303, 313 (2025).  These cases do not address the application of the McDonnell Douglas framework in the FLSA context.

stated reasons for the adverse-employment action were not the true reasons.[9]  See id. at 53-54.

### 4.    Willful And Malicious Injury Under The United States Bankruptcy Code

The United States Bankruptcy Code provides that individual debtors may not benefit from a discharge of their debts "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"  11 U.S.C. § 523(a)(6).  Although the Bankruptcy Code does not define "willful" or "malicious," courts have generally analyzed whether a debtor has acted with the intent to injure the wronged party, and whether the debtor's actions were "wrongful" and "without just cause."  Ball, 451 F.3d at 69 (quotations omitted); see Fan, 656 B.R. at 681-82.

## B.    Analysis

### 1.    Collateral Estoppel As To Mr. Fan's Status As An Employer And Payment Of Plaintiffs' Wages

Applying the doctrine of collateral estoppel, the Court finds that there is no genuine issue of disputed material fact that Mr. Fan was Plaintiffs' employer for the purposes of the FLSA and the NYLL, that Mr. Fan failed to pay Plaintiffs overtime wage premiums as required by the FLSA and the NYLL, that Mr. Fan paid Plaintiffs below the NYLL minimum wage, and that Mr. Fan did not pay any spread-of-hours premiums.

The issue of Mr. Fan's status as an employer was previously litigated in the Bankruptcy Adversary Proceeding, using a substantially similar legal standard as exists under the FLSA and the NYLL.  The Bankruptcy Court found that Mr. Fan "controlled the terms of each Plaintiff's employment, including rate of pay and hours worked[,]" based on testimonies from Mr. Jiao, Ms.

---

[9] The United States Supreme Court and the Second Circuit have not yet decided whether FLSA retaliation claims use a higher "but-for" standard at the third stage of the McDonnell Douglas framework, as is applied to retaliation claims under Title VII.  See Fox v. Starbucks Corp., No. 21-2531, 2023 WL 407493, at *1 n.1 (2d Cir. Jan. 26, 2023) ("We need not decide whether [the but-for] standard applies in FLSA [retaliation] cases as [the plaintiff's] claims fail in any event.").

Li, Mr. Zhai and Mr. Yu that Mr. Fan "was responsible for interviewing and hiring employees at [SSQ], paying employees at [SSQ], setting employees' work schedules and rates of pay, and keeping track of each Plaintiff's hours by having them sign timesheets monthly." Fan, 656 B.R. at 683 (citations omitted). Based on this finding, the Bankruptcy Court also determined that Mr. Fan's wage-paying practices were "contrary to commonly accepted duties of an employer and injurious to employees." Id. at 684. In other words, the Bankruptcy Court found that Mr. Fan and Plaintiffs had an employer-employee relationship.

In finding an employer-employee relationship between Mr. Fan and Plaintiffs, the Bankruptcy Court focused on Mr. Fan's power to hire employees, control over employees' work schedules, wage rates and payment methods, and employment record-keeping practices. See id. at 683. These factors mirror those in the "economic reality" test for whether a defendant is an employer for the purposes of the NYLL. See Barfield, 537 F.3d at 142. The legal standards governing the resolution of Mr. Fan's employer status under the FLSA and the NYLL are "substantially the same" from the standards governing the Bankruptcy Court's determination. Zherka, 459 F. App'x at 13. As such, the Court finds identity-of-issue as to Mr. Fan's employer status between the Bankruptcy Adversary Proceeding and the FLSA and the NYLL in this litigation.

The Court also finds that the issue of Mr. Fan's status as an employer was both actually litigated and was necessary to support a final judgment on the merits in the Bankruptcy Adversary Proceeding. Plaintiffs placed Mr. Fan's employer status at issue in the Bankruptcy Adversary Proceeding when they argued, in their amended complaint in the Bankruptcy Adversary Proceeding, that "an employer is tasked with accounting for hours," and that Plaintiffs depended on Mr. Fan "for a true and correct accounting of hours and calculation of pay." Fan,

656 B.R. at 674 (citation omitted).  Although the Bankruptcy Court did not find that Mr. Fan

misrepresented Plaintiffs' rates of pay, the Bankruptcy Court found Mr. Fan's control over

Plaintiffs' wages and terms of employment, as established by Plaintiffs' testimony, to be an

integral reason behind the final judgment that Mr. Fan's debts were not dischargeable under the

Bankruptcy Code.  See id. at 683-84, 686, 689-90; Pls.' Mot. Ex. 2, ECF No. 156-2.

The issue of whether Mr. Fan properly paid Plaintiffs the minimum wage, overtime

wages and spread-of-hours pay was litigated in the Bankruptcy Adversary Proceeding.  The

Bankruptcy Court found, based on Plaintiffs' testimony, that Mr. Fan "scheduled his employees

to work no less than 11[-]hour shifts for six or seven days a week without paying the minimum

wage or overtime[,]" and that Mr. "Fan does not dispute that Plaintiffs never received minimum

wage, overtime, or spread[-]of[-]hours pay."[10]  Fan, 656 B.R. at 683.  Like with Mr. Fan's status

as an employer, Plaintiffs placed hours their worked and wages paid directly at issue in the

Bankruptcy Adversary Proceeding, alleging that Mr. Fan's debts were non-dischargeable

because Mr. Fan "willfully and maliciously failed to pay wages, overtime, and 'spread[-]of[-]

hours' premiums, or to provide wage statements and notice in violation of the FLSA and

NYLL."  Id. at 673.  This issue – whether Plaintiffs were given overtime pay, spread-of-hours

pay, and minimum-wage pay – was also central to the Bankruptcy Court's decision that Mr. Fan

"acted with malice because, taken as a whole, the evidence establishes that [Mr.] Fan's acts are

contrary to commonly accepted duties of an employer and injurious to employees."  Id. at 684.

---

[10] The Bankruptcy Court did not specify whether Mr. Fan failed to pay his employees the minimum wage under the FLSA or the NYLL.  The FLSA requires that employees be paid the higher of the federal minimum wage or the applicable state minimum wage.  See 29 U.S.C. § 218(a).  As such, the Court will only respectfully recommend the application of collateral estoppel against Mr. Fan as to a failure to pay the minimum wage under the NYLL only, as the minimum wage under the NYLL is higher than that under the FLSA.  See 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. L. § 652(1)(a).

This determination was incorporated into the Bankruptcy Court's final judgment on the merits as to the non-dischargeability of Mr. Fan's debts.  See id. at 689-90; Pls.' Mot. Ex. 2.

Furthermore, Mr. Fan had a full and fair opportunity to litigate both whether he was Plaintiffs' employer and whether he paid Plaintiffs overtime pay, spread-of-hours pay and minimum wages.  As previously stated, these issues were in the complaint and amended complaint of the Bankruptcy Adversary Proceeding, putting Mr. Fan on notice to contest these issues.  See Fan, 656 B.R. at 673-74.  Mr. Jiao, Ms. Li, Mr. Zhai and Mr. Yu testified as to these issues over the course of a two-day trial in the Bankruptcy Adversary Proceeding.[11]  See id. at 674-79.  Mr. Fan had the opportunity to testify at the Bankruptcy Adversary Proceeding, which he chose not to take.  See id. at 680.  The parties, including Mr. Fan, submitted briefs to the Bankruptcy Court, in which they had a further opportunity to advance their arguments.  See id. at 681.  Although Mr. Fan appears pro se in this action, he was represented by counsel throughout the Bankruptcy Adversary Proceeding, including at the trial.  See id. at 671.  In short, Mr. Fan had several opportunities to litigate the issues of his payment practices and his status as Plaintiffs' employer before the Bankruptcy Court.  That Mr. Fan did not fully take advantage of these opportunities was his own decision, but it does not relieve him of the consequences of the Bankruptcy Court's decision.

The Court finds that it would be procedurally fair to permit offensive collateral estoppel against Mr. Fan as to Mr. Fan's employer status and wage payments in this proceeding.  In the

---

[11] The Court notes that in response to Chulaizhadao and Ms. Jin's motion for summary judgment, Plaintiffs submitted the complete trial transcripts of the Bankruptcy Adversary Proceeding, which shows that both Plaintiffs and the Original Individual Defendants were given the opportunity to cross-examine each other's witnesses.  See Pls.' Opp. Mot. Ex. 2 37:13, 82:2, 126:6, ECF No. 165-3; Pls.' Opp. Mot. Ex. 3 38:7, 68:11, 81:17, ECF No. 165-4.  Plaintiffs did not include these transcripts or mention Mr. Fan's ability to cross-examine witnesses at the Bankruptcy Adversary Proceeding in the instant motion.

Bankruptcy Adversary Proceeding, Mr. Fan faced a judgment permitting Plaintiffs to proceed with their already-filed claims against him in this action.  See id.  Mr. Fan is therefore not at risk of a new, disproportionate adverse consequence in this action that he could not have anticipated in the Bankruptcy Adversary Proceeding.  That proceeding afforded Mr. Fan the opportunity to take his case to trial, challenge Plaintiffs' case-in-chief, and testify on his own behalf if he so chose.  These procedural rights mirror the same rights that would be afforded to Mr. Fan in a trial in this Court.  The Court is unaware – and the parties have not offered any evidence – of any prior proceeding against Mr. Fan that has led to a result inconsistent with the judgment in the Bankruptcy Adversary Proceeding.  Therefore, the Court finds that collateral estoppel, used offensively against Mr. Fan in this case, would be fair.

As such, the Court respectfully recommends that a summary declaration be entered against Mr. Fan that Mr. Fan was Plaintiffs' employer for the purposes of the FLSA and the NYLL, and that Mr. Fan did not pay Plaintiffs overtime premiums under the FLSA and the NYLL, the minimum wage under the NYLL and spread-of-hours premiums under the NYLL.

### 2.  Summary Judgment As To Plaintiffs' Wage-and-hour Claims

In their motion papers, Plaintiffs do not specifically seek to preclude the issues of whether Mr. Fan unlawfully withheld tips or whether he provided wage notices and wage statements as required by the NYLL.  See Pls.' Mem. L. at 6-7, 9 (arguing that the Court "should find" that Mr. Fan "fail[ed] to compensate [P]laintiff[s]").  Nevertheless, Plaintiffs seek summary judgment on all of their claims against Mr. Fan.  See Pls.' Mot. at 1 (asking the Court to grant summary judgment against Mr. Fan "on all of Plaintiff[s'] [c]laims").  The Court finds that the Bankruptcy Court did not make any determinations as to the dates during which Mr. Fan failed to comply with the FLSA or the NYLL, or the amounts by which he failed to do so.  As such, Plaintiffs did not meet their burden to show that there is no genuine issue of material fact

as to their wage-and-hour claims.

As the Court notes, Plaintiffs did not argue, or point to citations in the record, that there was no genuine issue of material fact as to the tip claims, wage-notice claims and wage-statement claims.  See Pls.' Mem. L. at 3-4, 6-7, 9.  Beyond these specific claims, Plaintiffs' motion has a more fundamental flaw – namely, that Plaintiffs did not prove a lack of a genuine issue of disputed material fact as to whether Plaintiffs are even eligible for protection under the FLSA and the NYLL.  In addition, Plaintiffs do not argue that the Court could calculate any of the alleged damages suffered based on the Bankruptcy Court's decision.  See generally id.

Based on the Bankruptcy Adversary Proceeding, the Court has found that Plaintiffs met their burden of proof that Mr. Fan was Plaintiffs' employer.  Plaintiffs did not argue, let alone point to the absence of any genuine issue of material fact in the record, that a relationship to commerce as required under the FLSA exists.  See 29 U.S.C. §§ 206(a), 207(a).  Plaintiffs did not argue that they were "engaged in commerce or in the production of goods for commerce" during their time at SSQ, 29 U.S.C. §§ 206(a), 207(a), that SSQ employed individuals who either produced or handled goods that were produced in commerce, and that SSQ exceeded $500,000 in annual revenue.  See 29 U.S.C. § 203(s)(1).  Plaintiffs also do not argue or point to any evidence in the record indicating that they do not qualify for any of the exemptions under the FLSA or the NYLL, a prerequisite for both FLSA and NYLL protections.  See 29 U.S.C. § 213; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14.  Viewing the evidence in the light most favorable to Mr. Fan, as the non-moving party, the Court finds that Plaintiffs did not meet their summary-judgment burden as to whether the FLSA and the NYLL support Plaintiffs' claims.

There may be evidence in the record and established at the Bankruptcy Adversary Proceeding that could support a finding that Plaintiffs are covered employees under the FLSA and the NYLL.  For example, testimony that SSQ's "daily revenue generally ranged from $2,000

to $5,000" may be inferred to support a finding that SSQ qualified for enterprise coverage under the FLSA.  Fan, 656 B.R. at 676; see 29 U.S.C. § 203(s)(1); Jacobs, 577 F.3d at 96. Furthermore, evidence that Plaintiffs prepared food, washed dishes and assisted in a restaurant kitchen may be used to argue that they were not exempt employees.  See Fan, 656 B.R. at 675, 677-79, 29 U.S.C. § 213; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14.  For this Court to rely on such evidence here would be for the Court to draw inferences in the moving party's favor.  At the summary-judgment stage, particularly when summary judgment is asserted against a pro se party, the Court must draw all of its inferences in the non-moving party's favor.  In doing so, the Court finds that Plaintiffs have not established every element of liability under each claim under the FLSA and the NYLL.[12]

The Court has particular concerns as to whether Plaintiffs even have standing to bring their wage-notice and wage-statement claims.[13]  Plaintiffs allege in the ACC that they never received statements with, inter alia, their weekly payments and wages.  See ACC ¶¶ 52-53, 65, 98, 114.  They do not allege that they suffered a "concrete injury in fact" from not receiving these statements or notices, let alone an injury with a "causal connection" to Mr. Fan's alleged failure to provide wage notices and wage statements.  Guthrie, 113 F.4th at 302-03, 308.  As such, it is unclear whether the Court has jurisdiction to hear Plaintiffs' wage-notice and wage-statement claims.[14]

---

[12] In fact, Plaintiffs acknowledge in their response to the Rule 56.1 Statement submitted by the Successor Defendants in their summary-judgment motion that "[t]here was no finding on the merits of the FLSA, NYLL, or [NYDCL] claims, by the Bankruptcy Court."  Pls.' Rule 56.1 Statement Response ¶ 9, ECF No. 165-8.

[13] The Court raises this issue of standing sua sponte because without standing, the Court does not have subject matter jurisdiction to hear the merits of Plaintiffs' wage-notice and wage-statement claims.  See Merck-Medco, 433 F.3d at 198.

[14] The Bankruptcy Court found that Mr. Fan did not provide wage notices and wage statements. See Fan, 656 B.R. at 683-84.  Because the Court is uncertain as to whether Plaintiffs even have

The Court therefore respectfully recommends that Plaintiffs' motion for summary judgment as to their wage-and-hour claims against Mr. Fan be denied. The Court additionally respectfully recommends that Plaintiffs be ordered to show cause within 30 days of the adoption of this report and recommendation, should it be adopted, as to why Plaintiffs have standing to bring their wage-notice and wage-statement claims in this Court.

### 3.    Collateral Estoppel As To Plaintiffs' Retaliation Claims

Plaintiffs also seek application of collateral estoppel against Mr. Fan as on the issue that Mr. Fan "retaliated against [Plaintiffs] for filing a lawsuit in the Eastern District Court of New York." Pls.' Mem. L. at 9. The Court does not find that offensive collateral estoppel is appropriate as to these claims.

First, there is no identity of issue between the Bankruptcy Court's determination that Mr. Fan "acted with malice[,]" Fan, 656 B.R. at 684, and between a finding of retaliation under the FLSA and under the NYLL. A retaliation claim under the FLSA requires an intense factual inquiry, with different burdens of proof at different stages, into, inter alia, whether Mr. Fan had an intent to retaliate against Plaintiffs. See Mullins, 626 F.3d at 53. Even beyond an inquiry into Mr. Fan's intent, a retaliation claim requires a factual finding that Mr. Fan's threats were in fact retaliatory – that they constituted an "adverse[-]employment action," with a causal link to protected conduct from Plaintiffs. Id.

These legal questions were not at issue in the Bankruptcy Adversary Proceeding. There, the Bankruptcy Court's focus was whether Mr. Fan's statements toward Plaintiffs "establish[ed] malice[.]" Fan, 656 B.R. at 683. The legal standards litigated in the Bankruptcy Adversary

---

standing, the Court declines to consider whether Plaintiffs have met their summary-judgment burden on the wage-notice and wage-statement claims. See Guthrie, 113 F.4th at 302-03.

Proceeding were whether Mr. Fan's acts were "wrongful" and "done consciously and knowingly in the absence of just cause or excuse." Id. at 682 (citations omitted). This line of argument is reflected in the parties' post-trial briefs, where Mr. Fan argued "only that threats of malice after Plaintiffs' employment was terminated does not establish malice." Id. at 683. The parties did not litigate, for example, whether Mr. Fan's conduct after Plaintiffs had ceased working at SSQ could constitute an adverse-employment action, whether Plaintiffs engaged in protected activity, or if Mr. Fan acted with the intent to retaliate for Plaintiffs' allegedly protected activity.[15] Because the legal standards for retaliation under the FLSA and the NYLL, and for malice under the Bankruptcy Code are "significantly different[,]" Computer Assocs. Intern., 126 F.3d at 371, collateral estoppel is inapplicable as to this claim.

Collateral estoppel also does not apply to the issue of retaliation because the Bankruptcy Court's finding that Mr. Fan "threatened" Plaintiffs was not necessary to support a final judgment on the merits in the Bankruptcy Adversary Proceeding. Fan, 656 B.R. at 684. The Bankruptcy Court acknowledged that Mr. Fan's statements were "additional evidence of malice[.]" Id. The Bankruptcy Court did not base its final judgment Mr. Fan's threats of violence, instead finding that Mr. Fan acted with malice because he underpaid his employees. See id. (finding that Mr. Fan acted with malice while "[p]utting threats of violence aside"). The potential malice behind Mr. Fan's threats was therefore "ancillary" to the Bankruptcy Court's determination that Mr. Fan's debts were not dischargeable. Qiao Lin, 576 B.R. at 48-49. Imposing offensive collateral estoppel in dispositive motion practice in this action based on a matter that was not dispositive in the prior action would be unfair to Mr. Fan.

---

[15] Because the parties only litigated at the Bankruptcy Adversary Proceeding whether Mr. Fan's threatening statements constituted malice, Plaintiffs' argument that the Bankruptcy Court "found that [Mr. Fan] . . . did retaliate against [Plaintiffs] following [their] filing of the case" mischaracterizes the Bankruptcy Adversary Proceeding on which they rely. Pls.' Mem. L. at 10.

As such, the Court respectfully recommends that Plaintiffs' motion for summary judgment as to their retaliation claims against Mr. Fan be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court respectfully recommends that Plaintiffs' motion for summary judgment be granted in part and denied in part.  First, the Court respectfully recommends that a summary declaration be entered against Mr. Fan that Mr. Fan was Plaintiffs' employer for the purposes of the FLSA and the NYLL, and that Mr. Fan did not pay Plaintiffs overtime premiums under the FLSA and the NYLL, the minimum wage under the NYLL, and spread-of-hours premiums under the NYLL.  Second, the Court respectfully recommends that Plaintiffs' motion for summary judgment as to their wage-and-hour claims and their retaliation claims against Mr. Fan be denied.  Third, the Court respectfully recommends that Plaintiffs be ordered to show cause as to why they have standing to bring their wage-notice and wage-statement claims within 30 days of the adoption of this report and recommendation, should it be adopted.

## V.    OBJECTIONS

This report and recommendation will be filed electronically.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b)(2).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to timely file objections will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).

The Court will mail a copy of this report and recommendation and the docket sheet to Defendants Shang Shang Qian at 3634 Union Street, Flushing, New York 11354 and at 29 New York Avenue, Westbury, New York 11590; and Zhaorui Fan at 215 Clinton Road, Garden City, New York 11530.

The Clerk of Court is also respectfully directed to update Defendant Shang Shang Qian's address on the docket.  See ECF No. 146 ¶ 9.


Dated:  Brooklyn, New York
        August 15, 2025

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge