UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
GUANGLEI JIAO, NAN YU, RUIJI ZHAI and      :
YANJUN LI,                                 :
                                           :
            Plaintiffs,                    :          **REPORT AND**
                                           :          **RECOMMENDATION**
     -against-                             :
                                           :          18 Civ. 5624 (HG) (VMS)
SHANG SHANG QIAN INC., YUAN YUAN           :
WU a/k/a/ ANDY WU, ZHAORUI FAN, DAN        :
WU a/k/a STEPHY WU, MEILING ZOU a/k/a      :
DENISE ZOU, CHULAIZHADAO INC., and         :
SONG YUE JIN,                              :
                                           :
            Defendants.                    :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

        This is an action to recover damages for alleged violations of the Fair Labor Standards

Act, 29 U.S.C. §§ 201 et seq., and the New York Labor Law, N.Y. Lab. L. §§ 190 et seq.; 650 et

seq. and the corresponding New York regulations (the "NYLL"), and the New York Debtors &

Creditors Law, N.Y. Debt. & Cred. L. § 273 (the "NYDCL").  Before the Court on referral from

the District Court is Defendants Chulaizhadao Inc. ("Chulaizhadao") and Song Yue Jin ("Ms.

Jin") (together, the "Successor Defendants")'s motion for summary judgment pursuant to Federal

Rule of Civil Procedure ("Rule") 56, on the docket at ECF No. 161.  For the reasons set forth

below, the Court respectfully recommends that the Successor Defendants' motion the granted in

part and denied in part.

        First, the Court respectfully recommends that the Successor Defendants' motion for

summary judgment as to Plaintiffs' retaliation claims be denied for lack of standing.  Second, the

Court respectfully recommends that the Successor Defendants' motion for summary judgment as

to Plaintiffs' FLSA and NYLL claims against Chulaizhadao be granted, and that the FLSA and

1

NYLL claims against Chulaizhadao be dismissed with prejudice.  Third, the Court respectfully recommends that, if the other recommendations in this report are adopted, that the Successor Defendants be permitted to move for summary judgment as to Plaintiffs' NYDCL claim.

## I.    BACKGROUND

This litigation spans several years and includes separate, related proceedings both in this Court and in the United States Bankruptcy Court for the Eastern District of New York.  The Court assumes the parties' familiarity with the factual background and procedural history, and will only recite the facts of this case relevant to the instant motion.

### A.    Factual Background

The following facts are taken from the parties' motion papers and the accompanying exhibits, which include the Bankruptcy Court's memorandum decision in the related adversary proceeding in United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Adversary Proceeding") at In Re Fan, 656 B.R. 666 (E.D.N.Y. 2024).  All facts are undisputed unless stated otherwise.  When indicated, citations are provided to Plaintiffs' testimonies at trial in the Bankruptcy Adversary Proceeding.

Plaintiffs Guanglei Jiao ("Mr. Jiao"), Nan Yu ("Mr. Yu"), Ruiji Zhai ("Mr. Zhai") and Yanjun Li ("Ms. Li") each formerly worked at Defendant Shang Shang Qian ("SSQ"), a Chinese restaurant in Flushing, New York.  See Fan, 656 B.R. at 672, 683.  Defendants Yuan Yuan Wu a/k/a/ Andy Wu ("Mr. Wu"), Dan Wu a/k/a Stephy Wu ("Ms. Wu"), Meiling Zou a/k/a Denise Zou ("Ms. Zou") and Zhaorui Fan ("Mr. Fan") (collectively, the "Original Individual Defendants") all "owned [SSQ] or are alleged to have managed [SSQ] or asserted control over [SSQ's] workers or their wages."  Id. at 671.  Plaintiffs testified during the Bankruptcy Adversary Proceeding that they worked at SSQ from 2016 and 2017 until September 21, 2018.

2

See Bankruptcy Adversary Proceeding Trial Day 1 Transcript ("Day 1 Tr.") 12:14-21, 62:6-13, 107:20-23, ECF No. 165-3; Bankruptcy Adversary Proceeding Trial Day 2 Transcript ("Day 2 Tr.") 7:7-13, ECF No. 165-4.

SSQ remained in business after Plaintiffs ceased working at the restaurant, but only briefly.[1] Ms. Zou testified at the Bankruptcy Adversary Proceeding that, although she worked at SSQ after Plaintiffs departed until October 2019, SSQ "ceased to operate" after she left. Day 2 Tr. 74:8-18. Furthermore, SSQ was issued a liquor license on September 10, 2019, which went into effect in October 2019; it expired on September 30, 2021, and was not renewed. See Pls.' Opp. Mot. Ex. 7, ECF No. 165-7. The Original Individual Defendants have represented on the record that SSQ has no assets. See 6/8/2021 Conference Tr. 11:7-12, ECF No. 87.

After SSQ closed, Ms. Zou testified, "another restaurant started operating" in the same location as SSQ; the new restaurant was named Chulaizhadao. Day 2 Tr. 74:19-75:24. Chulaizhadao was incorporated on November 7, 2019, with Successor Defendant Ms. Jin listed as the incorporator. See Defs.' Mot. Ex. A, ECF Nos. 161-7. A business address for Chulaizhadao was listed as 36-34 Union Street in Flushing, New York, the same address listed as the premises for SSQ in SSQ's expired liquor license. See Pls.' Opp. Mot. Ex. 7. On December 7, 2019, Chulaizhadao, with the landlord of the premises, entered into a six-year lease for the ground floor of 36-34 Union Street, Flushing, New York, for a full-service restaurant. See Defs.' Mot. Ex. D, ECF No. 161-10. Chulaizhadao had applied for its food-service license one week prior, on December 2, 2019. See Defs.' Mot. Ex. E, ECF No. 161-11.

---

[1] The record is unclear as to when exactly SSQ closed. Ms. Zou's testimony at the Bankruptcy Adversary Proceeding indicates that SSQ was open through October 2019, whereas elsewhere, Mr. Fan appears to have disclosed that SSQ was "in business from July 15, 2015[,] through November 2018." Fan, 656 B.R. at 672; Day 2 Tr. 74:8-18. As Plaintiffs have argued that "SSQ closed its restaurant in November 2019," the Court will consider Plaintiffs' arguments based on this timeline. Pls.' Opp. Mem. L. at 3, ECF No. 166.

Plaintiffs allege that some of the former managers at SSQ worked at Chulaizhadao after SSQ closed.   At the Bankruptcy Adversary Proceeding, Mr. Jiao testified that after Chulaizhadao opened, he saw Ms. Fan's wife "park[] her car in front of the restaurant."  Day 1 Tr. 32:9-12.  Mr. Jiao also testified that he saw Mr. Fan "standing inside" Chulaizhadao, "standing by the bar counter."  Id. 32:13-20.  Mr. Jiao testified that Mr. Fan "was standing on the side of the counter[,]" rather than in front or behind the counter.  Id. 33:1-4.  In addition, Mr. Zhai testified at the Bankruptcy Adversary Proceeding that around October 2021, he saw Mr. Fan "parking his vehicle on the street and then walking into [Chulaizhadao]."  Id. 122:2-8. Plaintiffs also offered evidence of an individual purported to be Mr. Fan behind the cash register of Chulaizhadao, see Pls.' Opp. Mot. Ex. 5, ECF No. 165-5, and a restaurant receipt with an alleged alias for Mr. Fan on the receipt, see Pls.' Opp. Mot. Ex. 6, ECF No. 165-6; Pls.' Opp. Mem. L. at 3, 7.  Ms. Zou, who testified during the Bankruptcy Adversary Proceeding that she worked at SSQ in 2019, also was listed as an employee of Chulaizhadao in late 2019 and early 2020 in Chulaizhadao's tax filings.  See Day 2 Tr. 73:21-74:12; Pls.' Opp. Mot. Ex. 1 at 1-2, ECF No. 165-1.

**B.    Procedural History**

This procedural history was included in the Court's prior report and recommendations at ECF Nos. 169 & 170, but is included again here for ease of reference.

**1.    The Original Proceeding As To The Original Defendants**

Plaintiffs initially filed this action on October 9, 2018, as a putative class and collective action[2] against SSQ, Mr. Wu, Mr. Fan, Ms. Wu and Ms. Zou (collectively, the "Original

---

[2] Although filed as a putative class action, Plaintiffs only moved for conditional collective action certification, which was granted, see ECF No. 88, but not for class certification.  No one opted into the collective action, other than the named Plaintiffs.  See ECF No. 169.  The Court will therefore review the parties' summary judgment motions only as they pertain to the original

Defendants"), alleging minimum-wage violations under the FLSA and the NYLL, overtime violations under the FLSA and the NYLL, spread-of-hours violations under the NYLL, unlawful tip retention under the FLSA and the NYLL, failure to provide meal breaks under the NYLL, and wage-notice, wage-statement and payroll records violations under the NYLL.  See generally ECF No. 1.  Although the Original Defendants initially answered the complaint, see ECF No. 28, their answer was stricken after the Original Defendants' original counsel withdrew their representation and the Original Defendants failed to timely obtain new counsel or otherwise participate in this action.  See ECF Nos. 36, 40, 58, 62 (adopting report & recommendation).  The Clerk of Court entered a certificate of default against the Original Defendants after their original answer was stricken.  See ECF No. 63.

After the default against the Original Defendants was entered, the Original Defendants obtained counsel again and moved to vacate the entry of default.  See ECF No. 65.  The Court granted the Original Defendants' motion, permitted Plaintiffs to file an amended complaint and set a discovery schedule.  See 10/13/2020 Order.  Plaintiffs filed an amended complaint alleging the same causes of causes of action, against the same Defendants, as the original complaint, which the Original Defendants answered.  See ECF Nos. 67 & 69.

### 2.    The Original Individual Defendants File For Bankruptcy

Less than two months after Defendants answered the amended complaint, counsel for the Original Defendants informed Plaintiffs that the Original Defendants had obtained bankruptcy counsel and intended to file a bankruptcy petition.  See ECF No. 71-1.  Mr. Wu, Ms. Wu, Ms. Zou and Mr. Fan (the "Original Individual Defendants") filed for Chapter 7 Bankruptcy

---

plaintiffs in this action.  See 29 U.S.C. § 216(b); Ward v. Bank of New York, 455 F. Supp. 2d 262, 267 (S.D.N.Y. 2006) ("If no additional plaintiffs opt in to the lawsuit, the FLSA § 16(b) plaintiff advances only her own individual claims.").

Protection in United States Bankruptcy Court for the Eastern District of New York three days later (the "Bankruptcy Proceeding"), which automatically stayed proceedings as to the Original Individual Defendants.  See ECF No. 72.  The Bankruptcy Court later lifted the automatic stay as to the Original Individual Defendants.  See ECF No. 76.

The Bankruptcy Proceeding continued, and on May 19, 2011, the Original Defendants' second counsel asked the Court's permission to withdraw representation, as the Original Defendants informed their counsel that "they intend to concentrate their efforts on their bankruptcy case and will not further defend the litigation in this Court."  ECF No. 79 at 1.  This motion to withdraw also stated that SSQ "has been defunct since 2019 and no individual exists to act on his behalf."  Id.  After the Court granted the Original Defendants' second counsel's motion to withdraw, see 6/9/2021 Order, the Original Individual Defendants proceeded pro se.  See ECF No. 85; 7/14/2021 Order; 9/14/2021 Order; 12/16/2021 Order.  The Original Individual Defendants continued to be represented by counsel in the Bankruptcy Proceeding.  See ECF No. 84.

### 3.    The Filing And Consolidation Of The Successor Action

Three months after the Original Defendants' second counsel withdrew from the instant litigation, Plaintiffs filed a separate action in this District against Chulaizhadao, alleging that Chulaizhadao is liable as a successor in interest to SSQ for SSQ's alleged violations of the FLSA and the NYLL (the "Successor Action").  See Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), ECF No. 1 (E.D.N.Y. Sept. 7, 2021).  Plaintiffs filed an amended complaint in the Successor Action two months later adding Lee Union Street, LLC; Chihyon Lee a/k/a Sandra Lee; Paul Lee; Ki-Chang Lee and Soon-Ri Lee (collectively, the "Lee Defendants") and Ms. Jin as Defendants and adding a cause of action for alleged fraudulent transfer of assets in violation

of the NYDCL.  See generally Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS),

ECF No. 7 (E.D.N.Y. Nov. 17, 2021).

The Court directed Plaintiffs to "file a notice of related case on the docket" in this

litigation as to the Successor Action.  See 12/16/2021 Order.  Plaintiffs filed a notice of related

case as to the Successor Action one month later.  See ECF No. 89.  Following a conference, the

Court set a schedule to commence joint discovery for both this action and the Successor Action.

See 1/21/2022 Order.

After the Court set an initial joint discovery schedule, Plaintiffs moved for leave to

supplement the amended complaint to add claims of retaliation in violation of the FLSA and the

NYLL against Mr. Wu and Mr. Fan.  See ECF No. 92.  The Court granted Plaintiffs' motion in

part, permitting Plaintiffs to supplement the amended complaint to add retaliation claims and

directing Plaintiffs to file a proper supplemental complaint, as Plaintiffs' proposed supplemental

complaint was filed not as a supplement, but a proposed second amended complaint.  See ECF

Nos. 94, 92-2, 92-3.  Plaintiffs filed a proposed supplemental complaint one week later.  See

ECF No. 95-1.

After Plaintiffs submitted their proposed supplemental complaint in this action on Order

from the Court, Chulaizhadao filed a motion in the Successor Action to consolidate this litigation

with the Successor Action.  See Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS),

ECF No. 35 (E.D.N.Y. Aug. 12, 2022).  The Court granted Chulaizhadao's motion, consolidated

the Successor Action into this action, and directed Plaintiffs in this action to file a consolidated

amended complaint.  See ECF No. 98.

On November 29, 2022, Plaintiffs filed a consolidated complaint in this action against the

Original Defendants, Chulaizhadao, Mr. Jin and the Lee Defendants.  See ECF No. 101.

Approximately one week later, Plaintiffs filed an amended consolidated complaint ("ACC"), dismissing the claims against the Lee Defendants, as the District Court had previously dismissed the Lee Defendants from the Successor Action.  See ACC, ECF No. 104; Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), ECF No. 41 (E.D.N.Y. Sept. 7, 2022).  The Clerk of Court closed the Successor Action following the consolidation of the Successor Action with this action.  See Jiao et al v. Chulaizhadao Inc., No. 21 Civ. 5002 (HG) (VMS), 11/30/2022 Dkt. Entry (E.D.N.Y. Nov. 30, 2022).

Against the Original Defendants and Chulaizhadao, Plaintiffs allege in the ACC minimum-wage violations under the FLSA and the NYLL, overtime violations under the FLSA and the NYLL, spread-of-hours violations under the NYLL, unlawful tip retention under the FLSA and the NYLL and wage-notice and wage-statement violations under the NYLL.[3]  See ACC ¶¶ 164-207.  Against Mr. Wu and Mr. Fan, Plaintiffs allege unlawful retaliation in violation of the FLSA and the NYLL.  See id. ¶¶ 208-19.  Against all Defendants, Plaintiffs allege fraudulent transfer in violation of the NYDCL.  See id. ¶¶ 220-26.

Chulaizhadao filed a pre-motion conference letter seeking permission to move to dismiss the ACC.  See ECF No. 107.  The Court declined to stay discovery pending the outcome of a motion to dismiss and amended the discovery schedule as to all parties.  See 1/18/2023 Order. The District Court set a briefing schedule on Chulaizhadao's motion in a separate Order, see 1/19/2023 Order, and Chulaizhadao filed its motion to dismiss on March 2, 2023.  See ECF No. 115.  Following the submission of Chulaizhadao's motion to dismiss, the Court directed counsel for Chulaizhadao to "clarify" whether the motion to dismiss the ACC is "filed on behalf of

---

[3] Plaintiffs do not include allegations of meal-period and record-keeping violations in the ACC, even though such allegations had been included in their first amended complaint.  See ECF No. 67; ACC ¶¶ 164-207.

Chulaizhadao alone, or whether the [Original] Individual Defendants and Defendant Jin have joined in this motion."  8/9/2023 Order.  The District Court also directed counsel for the remaining Defendants to state whether they joined Chulaizhadao's motion.  See id.

Counsel for Chulaizhadao's letter in response stated that he represented Ms. Jin "for purposes of this motion [to dismiss]" and that "the attorney for [the Original Individual Defendants] informed me that they wish to join in this motion."[4]  ECF No. 125.  This letter statement conflicted with bankruptcy counsel's statement as to the Original Individual Defendants.  See id. at 2.  None of the Original Individual Defendants joined Chulaizhadao's motion to dismiss; rather, the Original Individual Defendants, through their bankruptcy counsel, requested that their deadline to answer the ACC be stayed pending the Bankruptcy Proceeding, with the "opportunity to respond" to the ACC "[i]n the event that the debts are deemed non-dischargeable[.]"  ECF No. 122.  The District Court did not construe Chulaizhadao's motion to dismiss to be filed on behalf of the Original Individual Defendants.

### 4.    The Bankruptcy Adversary Proceeding And Its Resolution

The Bankruptcy Proceeding continued alongside this litigation.  In the January 2023 conference setting an amended discovery schedule, "Plaintiffs' counsel updated the Court that there [would] be a hearing on the dischargeability of any debt that might be identified in this action in the District Court (regarding [Mr. Wu], [Mr. Fan], [Ms. Wu ] and [Ms. Zou])." 1/18/2023 Order.  The Bankruptcy Court held a trial in the related Bankruptcy Adversary

---

[4] Counsel for Chulaizhadao appears to be mistaken as to whether the Original Individual Defendants are represented in this action.  Counsel appears to have spoken with the Original Individual Defendants' counsel for the Bankruptcy Proceeding, rather than for this action.  See ECF Nos. 72 & 125; 6/9/2021 Order.  The Original Individual Defendants' second counsel in this action withdrew their representation in June 2021, see 6/9/2021 Order, and no subsequent counsel has filed a notice of appearance on the docket as to the Original Individual Defendants.

Proceeding as to the dischargeability of the Original Individual Defendants in the Bankruptcy Proceeding on March 28 and 29, 2023.  See ECF No. 116.  Following the trial, the parties filed post-trial briefs in the Bankruptcy Adversary Proceeding.  See ECF Nos. 116, 122, 126.

The parties continued to conduct discovery, and to seek Court relief for discovery disputes, while the Bankruptcy Adversary Proceeding remained pending.  See ECF Nos. 123, 124, 127, 128, 130.  The Court ordered that discovery be closed on October 24, 2023, and for dispositive motion practice to begin November 20, 2023.  See 9/5/2023 Order.  The parties were ordered to conduct one deposition after the close of discovery, see 11/16/2023 Order, and they were granted an extension to commence dispositive motion practice.  See ECF No. 132; 12/18/2023 Order.

On January 3, 2024, the United States Bankruptcy Court for the Eastern District of New York issued a decision as to the Bankruptcy Adversary Proceeding.  See Fan, 656 B.R. at 666. The Bankruptcy Court found that Plaintiffs' claims against Mr. Fan were nondischargeable under Section 523(a)(6) of the United States Bankruptcy Code, as Mr. Fan acted "with malice" and "contrary to commonly accepted duties of an employer" when he "(i) scheduled his employees to work no less than 11[-]hour shifts for six or seven days a week without paying the minimum wage or overtime[.]"  Id. at 671, 683-84.  The Bankruptcy Court also found that Plaintiffs' claims against Mr. Wu, Ms. Wu and Ms. Zou were dischargeable, and the Bankruptcy Court denied Plaintiffs in this action a judgment as to their claims.  See id. at 671, 690.  The Bankruptcy Court permitted Plaintiffs to "proceed in the FLSA Action against [Mr.] Fan to liquidate their claims (including attorneys' fees) and to obtain and enforce any money judgment."  Id. at 690.

Following the resolution of the Bankruptcy Adversary Proceeding, Plaintiffs filed a letter

informing the Court that they "cannot continue" this action against Mr. Wu, Ms. Wu and Ms. Zou, but that they could continue their claims against Mr. Fan. ECF No. 133. The District Court ordered Plaintiffs to dismiss Ms. Wu, Mr. Wu and Ms. Zou as Defendants, in light of the resolution of the Bankruptcy Adversary Proceeding. See 2/3/2024 Order.

Although Plaintiffs initially filed a motion to strike the Original Individual Defendants' answer, see ECF No. 136,[5] Plaintiffs eventually moved to dismiss Mr. Wu, Ms. Wu and Ms. Zou, see ECF No. 140. Mr. Wu, Ms. Wu and Ms. Zou were dismissed as parties on February 15, 2024, leaving SSQ, Mr. Fan, Chulaizhadao and Defendant Song Yue Jin ("Ms. Jin") as the only remaining Defendants in this action.[6] See 2/15/2025 Order. In his opposition papers to Plaintiffs' motion to strike the Original Individual Defendants' answer, Mr. Fan also moved to dismiss the ACC pursuant to Rule 12. See Fan Decl., ECF No. 141.

### 5.    The Parties' Dispositive Motion Practice

After Mr. Wu, Ms. Wu and Ms. Zou were dismissed, the parties began dispositive motion practice. Mr. Fan, proceeding pro se, filed a letter stating his dual intent to move for summary judgment and to dismiss the ACC along the same grounds as his previously filed letter. See ECF

---

[5] It is not clear to the Court why Plaintiffs' motion to strike the Original Individual Defendants' answer references the answer filed at ECF No. 28, which the District Court already struck, and which was not entered in response to the operative pleading in this action. See ECF Nos. 62, 67, 69, 101, 104.

[6] As the District Court noted, SSQ never obtained counsel or participated in this action since the Original Defendants' second counsel withdrew their representation. See, e.g., 6/9/2021 Order; 4/15/2024 Order. After nearly three years passed since SSQ's last participation in this action, the District Court ordered SSQ to obtain counsel, and, if SSQ failed to do so, directed Plaintiffs to request a certificate of default as to SSQ. See 4/15/2024 Order; 5/7/2024 Order. Plaintiffs requested a certificate of default one week later, and the Clerk of Court entered it against SSQ on June 3, 2024. See ECF Nos. 145 & 148. In a subsequent letter, Plaintiffs requested to refrain from filing a default judgment motion as to SSQ until "after the trial between [Plaintiffs] and [the] defendants that are currently in the case." ECF No. 149. SSQ remains unrepresented and unresponsive in this action.

No. 146.  The Successor Defendants filed a pre-motion letter stating their intent to move for summary judgment on the grounds that Plaintiffs lacked successor liability and liability pursuant to the NYDCL against them.  See ECF No. 143.  Plaintiffs filed letters withdrawing their motion to strike Mr. Fan's answer and instead seeking to move for summary judgment against Mr. Fan, based on the Bankruptcy Adversary Proceeding.  See ECF Nos. 151 & 152.  The District Court found Plaintiffs' motion to strike Mr. Fan's answer to be moot.  See 6/25/2024 Order.

Upon receipt of the parties' letters, the District Court set a briefing schedule for the summary-judgment motions of Mr. Fan, the Successor Defendants and Plaintiffs.  See ECF No. 154.  Plaintiffs and the Successor Defendants filed their respective summary-judgment motions. See ECF No. 155; Defs.' Mot., ECF No. 161.  The District Court referred the parties' motions to the undersigned for a report and recommendation.   In a subsequent Order, the District Court stated that it would "treat [Mr. Fan's] premotion conference letter as the motion [to dismiss and for summary judgment] itself."  11/7/2024 Order.

On the deadline to file reply briefs with the Court, and over one month after the deadline to file opposition papers, Plaintiffs filed their opposition papers to both Mr. Fan's and the Successor Defendants' motions.  See 10/21/2024 Order; ECF Nos. 163-66.  That same day, the Successor Defendants filed a motion asking the that "Plaintiffs' opposition papers . . . not be considered" as they were filed past the Court's deadline.  ECF No. 167.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility" of identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  In situations where "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 51-52 (2d Cir. 2011) (quotation omitted).

If the moving party meets this initial burden, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation & quotation marks omitted) (emphasis in original).  At the summary-judgment stage, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Williams v. New York City Hous. Auth., 61 F.4th 55, 72 (2d Cir. 2023) (quotation & emphasis omitted).  Nevertheless, the non-moving party cannot successfully oppose a summary-judgment motion on its pleadings alone, see Celotex, 477 U.S. at 324, as "unsupported allegations do not create a material issue of fact." Hodge v. City of Long Beach, 433 F. App'x 17, 19 (2d Cir. 2011) (citations omitted) (summary order).  The "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" in responding to a motion for summary judgment, and instead "must produce specific facts indicating that a genuine factual issue exists." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations & quotation marks omitted) (noting that "there must be evidence on which the jury could reasonably find for the non-movant" to survive summary judgment (citation & internal brackets omitted)).

A district court enjoys wide discretion to set the scope of the record that it will consider in a summary-judgment motion.  For example, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary[-

]judgment motion, it is not required to consider what the parties fail to point out." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) (citations & quotation marks omitted). It is also within a district court's discretion to consider a motion for summary judgment unopposed if a non-moving party files its opposition papers beyond the court's deadline. See Godfrey v. New York City Transit Auth., 258 F. App'x 353, 355 (2d Cir. 2007) (summary order) (quoting Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984)).

Evidence submitted at the summary-judgment stage must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In order to "aid the courts in deciding summary[-]judgment motions by quickly identifying disputed material facts[,]" T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009), Local Civil Rule 56.1 of the Southern and Eastern Districts of New York requires the parties to include "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried[,]" accompanied by a "citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1. Although a district court's "adherence to Local Civil Rule 56.1" is a matter of discretion, Suares v. Cityscape Tours, Inc., 603 F. App'x 16, 17 (2d Cir. 2015) (summary order), "unsupported assertions" in a Rule 56.1 statement "must nonetheless be disregarded and the record independently reviewed." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citation omitted).

The Court does not agree with the Successor Defendants that Plaintiffs' opposition papers must be disregarded, even though they were filed one month late. See ECF No. 167; 10/21/2024 Order. The Successor Defendants have not described any prejudice they may suffer from Plaintiffs' late filing. See ECF No. 167. For example, the Successor Defendants have not

14

indicated that they have lost the opportunity to file a reply, nor have they asked for an extension of time to file a reply.  See id.  In any event, the Court previously granted the Successor Defendants multiple sua sponte extensions when they have previously failed to meet the Court's deadlines for dispositive motion practice.  See 11/22/2023 Order; 1/29/2024 Order; 4/1/2024 Order; 9/24/2024 Order.  The Court sees no reason why Plaintiffs, as the non-moving parties with respect to Mr. Fan's and the Successor Defendants' motions, should face severe consequences for their alleged "total disregard of this Court's order."  ECF No. 167.  As such, the Court respectfully recommends that the Successor Defendants' motion to dismiss Plaintiffs' opposition papers and to consider their motion unopposed be denied.  In this case, for purposes of this report and recommendation, the Court will consider all of the relevant motion filings, at ECF Nos. 161, 165 & 166, so that no party may claim any procedural prejudice.

## III.    DISCUSSION

The Successor Defendants argue that summary judgment should be granted as to Plaintiffs' wage-and-hour claims against the Successor Defendants because the Successor Defendants never employed Plaintiffs and because Plaintiffs cannot demonstrate a theory of successor liability.  See Defs.' Mot. at 3-8.  In the alternative, the Successor Defendants argue that Chulaizhadao does not meet the minimum annual revenue requirement for liability under the FLSA.  See id. at 10.  The Successor Defendants also argue that the retaliation claims against Mr. Fan should be dismissed.  See id. at 9-10.  In response, Plaintiffs argue that there are "triable issues of fact" as to whether there was a fraudulent transfer of assets between SSQ and Chulaizhadao, as Chulaizhadao used SSQ's former personnel and liquor license.  See Pls.' Opp. Mem. L. at 6-7.  Plaintiffs also argue that SSQ's FLSA coverage, not Chulaizhadao's FLSA coverage, is at issue, and that the Successor Defendants' arguments as to Plaintiffs' retaliation

claims are moot.  See id. at 7-8.

The Court notes that the Successor Defendants did not comply with Local Civil Rule 56.1, in that most of the Successor Defendants' Rule 56.1 statements do not contain citations to admissible evidence.  See Defs.' Rule 56.1 Statement, ECF No. 161-1; Local Civ. R. 56.1(d).  Given that the Successor Defendants' memorandum of law in support of their motion for summary judgment does contain citations to the record, with exhibits for the Court to independently review, the Court will not deny the Successor Defendants' motion simply because it does not comply with Local Civil Rule 56.1.  See Defs.' Rule 56.1 Statement; Local Civ. R. 56.1(a).  At the same time, the Court will not consider the Successor Defendants' unsupported statements when reviewing this motion.  See Giannullo, 322 F.3d at 140.

The Court will first consider the Successor Defendants' arguments as they pertain to Plaintiffs' retaliation claims, then as to Plaintiffs' wage-and-hour claims.

## A.    Retaliation Claims

The Successor Defendants argue that summary judgment should be granted on the retaliation claims against Mr. Fan because any alleged retaliatory actions "originated from" Mr. Wu.  Defs.' Mot. at 9.  In the alternative, the Successor Defendants argue that no causal connection exists between Mr. Fan's conduct and Plaintiffs' protected activity.  See id.  The Court finds that the Successor Defendants do not have standing to bring this motion.

Article III of the United States Constitution empowers federal courts only to hear "Cases" and "Controversies" and "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).  In order to have Article III standing, a litigant must have, inter alia, a "personal injury that is distinct and palpable."  Pashaian v. Eccelston Properties, Ltd., 88 F.3d

16

77, 82-83 (2d Cir. 1996) (citations & quotation marks omitted) (noting that defendants and non-party witnesses must also have standing to advance their interests).  Issues of standing "go[] to [a court's] subject matter jurisdiction" and "can be raised <u>sua sponte</u>."  <u>Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC</u>, 433 F.3d 181, 198 (2d Cir. 2005).

"Movants do not have standing to move on behalf of other defendants to [an] action." <u>Kuklachev v. Gelfman</u>, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009).  In particular, a defendant "lacks standing to move for dismissal or summary judgment with respect to [a] count in which he is not named.[.]"  <u>Dist. Att'y of New York Cnty. v. Republic of the Phil.</u>, 307 F. Supp. 3d 171, 194-95 (S.D.N.Y. 2018) (quoting <u>Dover Ltd. V. A.B. Watley, Inc.</u>, No. 04 Civ. 7566 (FM), 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (noting that a defendant "lacks standing to attack the legal sufficiency" of claims for relief not asserted against that defendant)).

Here, Plaintiffs' retaliation claims were only asserted against Mr. Fan and Mr. Wu.  <u>See</u> ACC ¶¶ 208-19.  Because Mr. Wu was previously dismissed from this action, <u>see</u> 2/15/2024 Order, Mr. Fan is the only defendant who must mount a defense against Plaintiffs' retaliation claims.  As such, only Mr. Fan has standing to move for summary judgment as to Plaintiffs' retaliation allegations.  In fact, Mr. Fan filed a motion to dismiss the ACC with Plaintiffs' retaliation claims against him, <u>see</u> ECF No. 146, on which the Court issued a separate report and recommendation.  <u>See</u> ECF No. 169.

Furthermore, as the District Court already pointed out to the Successor Defendants, counsel for the Successor Defendants does not represent Mr. Fan and cannot file a potentially dispositive motion on his behalf without his consent.  <u>See</u> 8/9/2023 Order.  The record does not show that Mr. Fan consented to the Successor Defendants' counsel bringing a summary-

17

judgment motion on his behalf, or that Mr. Fan joined this motion.  Rather, Mr. Fan brought own summary-judgment motion in this action, on different grounds than those argued in the Successor Defendants' motion.  See ECF No. 146.  The Successor Defendants, through their counsel, may not advance Mr. Fan's interests on his behalf.

Accordingly, the Court respectfully recommends that the Successor Defendants' motion for summary judgment as to Plaintiffs' retaliation claims against Mr. Fan be denied for lack of standing.  The Court does not make any recommendations as to the merits of these arguments, if raised by Mr. Fan.

### B.   Wage-and-hour Claims

#### 1.   Chulaizhadao's Status As Plaintiffs' Employer

The FLSA protects employees from wage-and-hour violations of "employers."  See 29 U.S.C. §§ 206-07.  The test for determining status as an employer under the FLSA is broad, as it focuses on the "economic reality" of the putative employment relationship; consequently, more than one entity can be an "employer" at once.  See Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 66-67 (2d Cir. 2003).  Courts in the Second Circuit use four factors to help determine whether an entity is an "employer" under the economic reality test, namely, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

Although the Second Circuit has not definitively ruled on whether the NYLL and the FLSA apply the same tests for an employer or a joint employer, see Irizarry v. Catsimatidis, 722

F.3d 99, 117 (2d Cir. 2013); <u>Perez Perez v. Escobar Construction, Inc.</u>, No. 23 1240 Civ., 2024 WL 3594325, at *2 n.3 (2d Cir. July 31, 2024) (summary order), the Second Circuit "construe[s] the NYLL definition [of an employee] as the same in substance as the definition in the FLSA." <u>Velarde v. GW GJ, Inc.</u>, 914 F.3d 779, 783 (2d Cir. 2019) (quoting <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, 811 F.3d 528, 534 (2d Cir. 2016)).  District courts within the Second Circuit have "interpreted the definition of 'employer' under the [NYLL] coextensively with the definition by the FLSA."  <u>Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.</u>, 397 F. Supp. 3d 249, 263-64 (E.D.N.Y. 2019) (collecting cases) (analyzing the plaintiff's FLSA and NYLL claims "under the same standard"); <u>Winfield v. Babylon Beauty Sch. of Smithtown Inc.</u>, 89 F. Supp. 3d 556, 570 (E.D.N.Y. 2015).  For the purposes of this motion, any distinction between the FLSA and the NYLL's definition of employer would make no difference as to the recommendations in this report.

Under both the FLSA and the NYLL, a corporate defendant is not an employer if a plaintiff has ceased the at-issue employment before the corporate defendant's existence.  <u>See Patino v. Brady Parking, Inc.</u>, No. 11 Civ. 3080 (DF), 2017 WL 5198192, at *8 (S.D.N.Y. Oct. 31, 2017).

Here, there is no evidence offered by any party of an employer-employee relationship between Plaintiffs and Chulaizhadao.  Plaintiffs all ceased working for SSQ on September 21, 2018.  <u>See</u> Day 1 Tr. 12:18-21, 62:10-13, 107:22-23; Day 2 Tr. 7:9-13.  Chulaizhadao did not exist as a corporate entity until November 7, 2019, when Chulaizhadao filed a certificate of incorporation.  <u>See</u> Defs.' Mot. Ex. A.  Plaintiffs do not allege that they ever worked for Chulaizhadao.  <u>See</u> ACC ¶¶ 14-17, 56, 68, 82, 101 (alleging only that Plaintiffs worked at SSQ).

As such, the Court finds that Chulaizhadao as an entity was not Plaintiffs' employer

between 2016 and September 21, 2018, within the meaning of the FLSA and the NYLL.  See Day 1 Tr. 12:14-21, 62:6-13, 107:20-23; Day 2 Tr. 7:7-13.  Chulaizhadao therefore "may only be held liable in this case for any wage-and-hour violations if principles of successor liability apply."  Patino, 2017 WL 5198192, at *8.

### 2.    Chulaizhadao's Interstate Commerce Nexus

In the ACC, Plaintiffs allege that Chulaizhadao is liable for SSQ and the Original Individual Defendants' conduct as SSQ's successor in interest.  See ACC ¶¶ 123-53.  The Successor Defendants argue in their summary-judgment motion that the Court lacks subject-matter jurisdiction over Chulaizhadao, as Chulaizhadao does not meet the minimum revenue requirements to impose liability under the FLSA.[7]  See Defs.' Mot. at 10.

The Successor Defendants argue that Plaintiffs' claims against them should be dismissed because "the threshold amount of $500,000 for FLSA jurisdiction" has not been met.  Defs.' Mot. at 10.  To support this argument, the Successor Defendants offer Chulaizhadao's 2019 tax returns.  See Defs.' Mot. Ex. F, ECF No. 161-12.  In response, Plaintiffs argue that a "successor need not itself meet the enterprise coverage threshold of the FLSA in order to be held liable as a successor to an employer that did."  Pls.' Opp. Mem. L. at 7.  The Court agrees with Plaintiffs.

The Successor Defendants misunderstand the proper entity to which FLSA coverage must exist for Plaintiffs to pursue their claims.  When a plaintiff seeks relief against a defendant on a theory of successor liability, the "financial condition of [the alleged successor] is . . . not

---

[7] The Court rejects the Successor Defendants' assertion that the Court lacks subject-matter jurisdiction due to Chulaizhadao's alleged inability to meet the $500,000 revenue requirement for enterprise coverage, as this requirement is not jurisdictional.  See Padilla v. Manlapaz, 643 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) (citing 29 U.S.C. § 203(s)(1)(A)(ii)); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006) (noting that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character" (quotation omitted)).

determinative" of enterprise coverage.  Alvarez v. 40 Mulberry Rest., Inc., No. 11 Civ. 9107 (PAE), 2012 WL 4639154, at *3 (S.D.N.Y. Oct. 3, 2012).  Rather, the "relevant question" is "whether [the predecessor] was a qualifying 'enterprise engaged in commerce' when it employed [the plaintiff], and whether [the alleged successor is] answerable for [the predecessor's] liabilities."  Id.

Plaintiffs do not seek to impose liability on Chulaizhadao for Chulaizhadao's wage-and-hour practices, but rather, for the wage-and-hour practices of SSQ and the Original Individual Defendants.  See ACC ¶¶ 142-45 (alleging that the Original Defendants "injured Plaintiffs and their other employees").  Plaintiffs only allege that they worked for SSQ and the Original Individual Defendants.  See ACC ¶¶ 14-17.  As the Court already found, Plaintiffs never worked for the Successor Defendants.  See, supra, Part III.B.1.  As such, the "relevant question" for FLSA coverage is whether SSQ, not Chulaizhadao, meets the requirements for enterprise or individual coverage.[8]  Alvarez, 2012 WL 4639154, at *3.  Nonetheless, this issue need not be

---

[8] Coverage under the FLSA only applies if an employee is either "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce[.]"  29 U.S.C. §§ 206, 207(a).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009).  In order to meet the standard for enterprise coverage, an employer must both have 1) employees either "engaged in commerce or in the production of goods for commerce," or "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and 2) a minimum annual gross revenue of $500,000.  29 U.S.C. § 203(s)(1).

Although the Successor Defendants did not argue that SSQ did not meet the minimum revenues for FLSA coverage, viewing the evidence in the record in the light most favorable to Plaintiffs, a reasonable juror may find that SSQ qualified for enterprise coverage under the FLSA.  Ms. Li testified at the Bankruptcy Adversary Proceeding that SSQ generated between $2,000 and $5,000 in revenue per day.  Day 1 Tr. 65:24-66:10.  Plaintiffs also testified at the Bankruptcy Adversary Proceeding that they would often work seven days per week.  See Day 1 Tr. 17:15-17, 25:17-19, 71:2-4, 111:22-24; Day 2 Tr. 8:7-8.  If SSQ were open every day of the year, SSQ could possibly generate at least $730,000 per year in revenues.  This would satisfy the minimum revenue requirement for enterprise coverage with room to spare.  In addition, Mr. Jiao and Mr. Yu testified at the Bankruptcy Adversary Proceeding that Mr. Fan would send him to the

resolved on this motion because, even if there is coverage under the FLSA and the NYLL, for the reasons stated below, the Successor Defendant are not liable for the alleged violations under these statutes.

### 3.    Chulaizhadao's Liability As SSQ's Successor

#### a.    Legal Standard

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Nevertheless, liability may be imposed "on successors beyond the bounds of the common law rule in a number of different employment-related contexts in order to vindicate important federal statutory policies." New York State Teamsters Conference Pension & Retirement Fund v. C&S Wholesale Grocers, Inc., 24 F.4th 163, 176-77 (2d Cir. 2022) (nothing that "[f]ederal courts have further expanded the boundaries of 'successor liability' to include . . . the Fair Labor Standards Act"). The burden of proof is on the "proponent of successor liability" to show its existence. Call Ctr. Techs., 635 F.3d at 52.

"In the FLSA and NYLL context, courts have employed two tests to determine if liability should be imposed on a successor – the traditional test and the substantial continuity test." Chen v. DG & S NY, Inc., 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016). Although the "Second Circuit has yet to decide which inquiry should govern the application of successor liability in the FLSA

---

supermarket to purchase food and "merchandise" for the restaurant as part of his duties. See Day 1 Tr. 16:3-17:20; Day 2 Tr. 8:23-9:1. Based on this testimony, a reasonable juror may infer that at least some of the goods that Mr. Jiao and Mr. Yu purchased would have come from outside New York State. If so, SSQ would have had employees that were "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]" 29 U.S.C. § 203(s)(1). Together with the testimony regarding SSQ's daily revenues, a reasonable juror may find that SSQ qualified for enterprise coverage under the FLSA.

context[,] . . . a number of district courts in this Circuit have found that the outcome would be the same no matter what test is applied."  Id. at 223 (citations omitted).

Regardless of which test is used, "successor liability focuses on whether a purchaser is liable for claims against the seller's company."  De Quan Lu v. Red Koi, Inc., No. 17 Civ. 7291 (VEC), 2020 WL 7711410, at *4 (S.D.N.Y. Dec. 29, 2020) (emphasis in original).  A "sale of all or substantially all assets is a necessary precondition to the application of the doctrine" of successor liability.  Wallace v. Crab House, Inc., No. 21 Civ. 5757 (LJL), 2023 WL 2477819, at *6 (S.D.N.Y. Mar. 13, 2023); see Chen v. L&L New Beginnings LLC, No. 21 Civ. 11225 (VEC), 2022 WL 2306946, at *2 (S.D.N.Y. June 27, 2022) ("[T]he predicate for application of both tests is a purchase of assets by the putatively-liable entity."); Bautista v. Beyond Thai Kitchen, Inc., No 14 Civ. 4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015) (noting that for the purposes of establishing liability, a successor "is the party that actually purchases the assets of the predecessor's business" (citation omitted)); cf. Patino, 2017 WL 5198192, at *9-11 (finding no successor liability under the traditional test because the plaintiff had not shown that the successor company purchased the assets of the prior company, but that successor liability could be found under the substantial-continuity test because "a majority of factors" in the substantial continuity test had been met).

For the purposes of this motion, the Court need not choose whether to apply the traditional test or the substantial-continuity test, as the evidence in the record upon which a jury could find a theory of successor liability is insufficient under either test.

### i.    The Traditional Test

The traditional test

recognizes four common-law exceptions to the rule that an asset purchaser is not liable for the seller's debts, applying to: (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto

23

merged with a seller; and (4) a buyer that is a mere continuation of a seller.

Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003).  Courts have "observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception."  Id. at 45 n.3.  In order to establish that a de facto merger has occurred between the buyer and the seller of corporate assets, New York law looks to "four traditional common-law factors: whether there is continuity of ownership, continuity of management, a dissolution of the selling corporation, and the assumption of liabilities by the purchaser."  Nat'l Serv. Indust., Inc., 460 F.3d at 210.  Of these factors, continuity of ownership is a "necessary factor" in de-facto-merger inquiry.  See Cargo Partner, 352 F.3d at 44, 47-48.

Regarding the first factor, under the NYDCL, "a transfer made or obligation incurred by a debtor is voidable as to a creditor" if, inter alia, the transfer was either made with intent to defraud or hinder a creditor.  N.Y. Debt. & Cred. L. § 273(a).  The law has several factors that may indicate an intent to defraud.  See N.Y. Debt. & Cred. L. § 273(b).  A transfer of assets is a "basic prerequisite of a fraudulent conveyance claim."  Red Rock Sourcing LLC v. JGX LLC, No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *40 (S.D.N.Y. Mar. 22, 2024).

"As a threshold matter," a finding of successor liability under the traditional test requires evidence that the alleged successor actually purchased the assets of the putative predecessor.  Patino, 2017 WL 5198192, at *9.

## ii.    The Substantial-continuity Test

The substantial-continuity test is more flexible in evaluating successor liability than the traditional test.  Under the substantial-continuity test, courts look to "whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations."  Chen, 406 F. Supp. 3d at 223

(citations & quotation marks omitted).  The substantial-continuity test analyzes the following nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

Battino v. Cornelia Fifth Ave., LLC, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (citations omitted).  "No one factor is controlling, and it is not necessary that each factor be met to find successor liability."  Bautista, 2015 WL 5459737, at *6; see Patino, 2017 WL 5198192, at *10-11 (finding successor liability under the substantial-continuity test because "the majority of factors relevant to the 'substantial continuity test' weigh in favor" of establishing liability).  Nevertheless, courts generally find the first two factors to be "indispensable to the imposition of successorship liability under the 'substantial continuity' test."  Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 91 (S.D.N.Y. 2017); see Lewis v. Blackman Plumbing Supply L.L.C., 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014) (citation omitted).

### b.    Application

#### i.    Plaintiffs Do Not Establish Successor Liability Under The Traditional Test

Plaintiffs argue that there are triable issues of fact as to whether successor liability is available under the fraudulent transfer exception of the traditional test, and that "there are triable issues as to whether the transaction between SSQ and [Chulaizhadao] was entered into fraudulently to escape obligations."  Pls.' Opp. Mem. L. at 6; see Cargo Partner, 352 F.3d at 45.  This argument fails because Plaintiffs have not offered evidence into the "threshold matter" that

a transaction or transfer of assets between SSQ and Chulaizhadao was ever made.  Patino, 2017 WL 5198192, at *9.

Plaintiffs' purported evidence of "badges of fraud" do not establish successor liability because they all depend on the existence of a transfer of assets, as to which Plaintiffs have not offered any evidence.  See Pls.' Mem. L. at 6-7 (arguing for "several badges of fraud, including: retention of control of the restaurant by [Mr.] Fan after the transfer; pre-transfer suit; [Mr.] Fan and SSQ absconding by failing to defend this matter for long stretches of time; and SSQ's insolvency having been out of business since November 2019" (citations omitted)).  A transfer of assets is a "basic prerequisite of a fraudulent conveyance claim."  Red Rock Sourcing LLC v. JGX LLC, No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *40 (S.D.N.Y. Mar. 22, 2024). Plaintiffs' arguments that "the transfer" was entered into fraudulently, Pls.' Mem. L. at 6, do not raise a disputed issue of material fact, as there is no evidence offered that a transfer occurred.

Although Plaintiffs did not argue that any other exceptions apply to Chulaizhadao and SSQ under the traditional test, see Pls.' Opp. Mem. L. at 6-7, the Court nevertheless finds the remaining exceptions inapplicable.  As Plaintiffs have not offered any evidence of an asset purchase or other agreement between SSQ and Chulaizhadao, Plaintiffs cannot demonstrate that Chulaizhadao expressly assumed SSQ's liabilities.  Because Plaintiffs did not offer evidence that SSQ's owners became one or more owners of Chulaizhadao, or that one or more of Chulaizhadao's owners were one or more owners of SSQ, Plaintiffs did not establish any continuity of ownership between SSQ and Chulaizhadao.  Without continuity of ownership, the de-facto-merger and mere-continuation exceptions under the traditional test also are not met. See Cargo Partner, 352 F.3d at 45 n.3, 47-48.

Although Chulaizhadao operated in the same location as SSQ after SSQ closed, such

evidence is insufficient to establish successor liability.  That a second business shares minimal overlapping characteristics to the first, closed business is insufficient to show that the second business "acquired" the first business's assets, de facto merged with it, or was a mere continuation of that earlier business.  See Wallace, 2023 WL 2477819, at *7 (noting that "[t]he act of a corporation in selling substantially all of its assets to a new and successor corporation is different from the acts of the owners of a corporation in setting up a new corporation engaged in the same business with the same customers and the same menu as its earlier corporation").

Because the record does not show that any of the common-law exceptions to the general prohibition on successor liability applies here, see id., under the traditional test, Chulaizhadao is not liable for SSQ's alleged labor law violations.

### ii. Plaintiffs Do Not Establish Successor Liability Under The Substantial-continuity Test

Plaintiffs have also failed to produce sufficient evidence under substantial-continuity test for a jury to conclude that successor liability exists.  Even viewed in the light most favorable to the non-moving parties, Plaintiffs cannot show that most of the test factors have been met.  The Court finds that the second factor – "the ability of the predecessor to provide relief" – is met, as SSQ is insolvent and would be unable to sustain a judgment against it.  Battino, 861 F. Supp. 2d at 404; see 6/8/2021 Conference Tr. 11:7-12.  The Court also finds that the fourth factor – "whether the new employer uses the same plant" – has been satisfied, as Chulaizhadao is operating a restaurant in the same location as SSQ.  Battino, 861 F. Supp. 2d at 404; see Defs.' Mot. Ex. A; Pls.' Opp. Mot. Ex. 7.  Plaintiffs have failed to provide evidence to support the remaining factors.

The evidence as to the first factor is insufficient for the same reasons that Plaintiffs have not established that a jury could find successor liability under the traditional test.  The first

factor, addressing the successor's notice of legal risk, requires the successor to have "notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor[.]"  Xue Ming Wang, 262 F. Supp. 3d at 89 (emphasis added).  As the Court already discussed, there is no evidence on the record that Chulaizhadao acquired SSQ's assets or business.  There is no evidence, for example, that Chulaizhadao entered into an asset purchase agreement with SSQ or that Chulaizhadao bought shares in SSQ's stock.  The Court cannot find that Chulaizhadao knew of this action when it "engaged in a transaction pursuant to which it purchased or acquired all or substantially all of the assets of" SSQ if there is no evidence that such a transaction has occurred. Wallace, 2023 WL 2477819, at *7.  Without evidence of a transaction between SSQ and Chulaizhadao, Plaintiffs have shown, at most, that Chulaizhadao was formed as a new business after SSQ closed.  See id.

As to the third factor, Plaintiffs' allegations in the ACC regarding the business relations between Chulaizhadao and SSQ are insufficient to establish continuity of business operations at the summary-judgment stage.  Plaintiffs allege in the ACC that Chulaizhadao and SSQ are interconnected because Chulaizhadao "has used [SSQ's] food service establishment (general) license" until "at least August 31, 2020[,]" and, "upon information and belief[,]" it has not "applied for a food service establishment (general) license of its own."  ACC ¶ 127.  In response to this unsupported allegation, Chulaizhadao offers its application for a general food service establishment license and lease agreement, which are respectively dated December 2 and 7, 2019.  See Defs.' Mot. Ex. D; Defs.' Mot. Ex. E.   Regarding the lease agreement, Chulaizhadao argues that "[t]here is no assignment of any lease or transfer of security deposit which normally occurs in acquisitions of one company by another."  Defs.' Mot. at 5-6.  Plaintiffs do not offer any documents or testimony in response to Chulaizhadao's food-license application and a

28

corporate identity in the City of New York, or to its lease agreement establishing an independent relationship between Chulaizhadao and the landlord of the premises.  See generally ECF No. 165.  Plaintiffs do not offer evidence that Chulaizhadao operated under SSQ's permits, rather than under its own food handler's license.  See Defs.' Mot. Ex. E.  Plaintiffs have simply shown that Chulaizhadao operates at SSQ's former location.

Plaintiffs argue that continuity of operations exist between Chulaizhadao and SSQ because Chulaizhadao "continued to operate using SSQ's liquor license."  Pls.' Opp. Mem. L. at 7.  The evidence, even viewed in the light most favorable to the non-moving parties, does not support this argument.  As Plaintiffs acknowledge, SSQ "renewed its liquor license prior to [its] closure, in September 2019."  Id. at 3.  Plaintiffs do not offer any evidence that Chulaizhadao "did not apply for a liquor license and used SSQ's liquor license during its operation."  Id.  That SSQ's inactive liquor license, which was issued on September 10, 2019, did not expire until after SSQ closed and Chulaizhadao opened, could not prove to a reasonable juror that Chulaizhadao used this license to purchase or sell liquor at its restaurant.   There is no evidence that Chulaizhadao or any other entity sought to renew SSQ's liquor license after its expiration in 2021, even though Plaintiffs argue that Chulaizhadao was in business beyond 2021.  See id.; Pls.' Opp. Mot. Ex. 7.  Plaintiffs' allegation that Chulaizhadao used SSQ's liquor license, based solely on a temporal overlap between the liquor license's validity and Chulaizhadao's operations, is conclusory and insufficient to create a genuine issue of material fact to support the claim that Chulaizhadao is SSQ's legal successor.  See Hodge, 433 F. App'x at 19.

Plaintiffs also fail to offer evidence that could help establish that the fifth and sixth substantial-continuity factors – "the same or substantially the same" work force and supervisory personnel – could be met.  Xue Ming Wang, 262 F. Supp. 3d at 89.  Plaintiffs argue that "the

substantial-continuity standard [is] triggered by, among other factors, [Ms. Zou] and [Mr.] Fan continuing to work at [Chulaizhadao] after the transfer of the business from SSQ."  Pls.' Opp. Mem. L. at 3.  As to Ms. Zou, Plaintiffs offer tax documents from Chulaizhadao listing Ms. Zou as its employee in late 2019 and early 2020, Ms. Zou's testimony from the Bankruptcy Adversary Proceeding that she worked for SSQ in 2019 and Plaintiffs' testimonies from the Bankruptcy Adversary Proceeding that Ms. Zou worked at SSQ while Plaintiffs were at SSQ and exerted control over Plaintiffs' employment at SSQ.  See Day 1 Tr. 24:15-17, 26:12-17, 68:9-24, 120:1-17; Day 2 Tr. 66:6-9; Pls.' Opp. Mot. Ex. 1 at 1-2.  For the sake of argument, the Court finds, for the purposes of this motion only, that Ms. Zou worked at SSQ and exerted supervisory control over Plaintiffs during Plaintiffs' employment, and that she worked at Chulaizhadao after SSQ closed.

As to Mr. Fan, Plaintiffs offer a photograph of an individual behind the counter of Chulaizhadao purported to be Mr. Fan and a customer receipt from Chulaizhado listing an alleged alias of Mr. Fan as the cashier.  See Pls.' Opp. Mot. Ex. 5; Pls.' Opp. Mot. Ex. 6; Pls.' Opp. Mem. L.  at 3, 7.  A single snapshot in time cannot raise a disputed issue of material fact as to whether Mr. Fan worked at Chulaizhadao, given that it only represents one moment in time, has no context for any activity that Mr. Fan was allegedly performing, and does not indicate that Mr. Fan had any authority as to Chulaizhadao's operations.  This evidence does not establish that Mr. Fan was a regular part of Chulaizhadao's work force.  Similarly, a reasonable juror could not find that a single receipt from a single transaction, with only the first name of an alleged alias of Mr. Fan, to be sufficient evidence to support the conclusion that Mr. Fan regularly worked at Chulaizhadao, see Pls.' Opp. Mot. Ex. 6, or had any authority at the restaurant.

Even accepting Plaintiffs' proposed conclusion that Ms. Zou and Mr. Fan worked at

Chulaizhadao, Plaintiffs do not offer sufficient evidence that the work forces and supervisory personnel at Chulaizhadao and SSQ were "substantially the same[.]"  Xue Ming Wang, 262 F. Supp. 3d at 89.  At best, Plaintiffs' evidence suggests that only two employees worked at both restaurants, out of five or six employees working at SSQ at a given time.  See Day 1 Tr. 98:23-99:10; Day 2 Tr. 22:11-23:11; Pls.' Opp. Mot. Ex. 1 at 1-2, Pls.' Opp. Mot. Ex. 5, Pls.' Opp. Mot. Ex. 6.  Plaintiffs' evidence also does not offer any information about whether Mr. Fan or Ms. Zou held supervisory roles at Chulaizhadao. [9]  Any arguments suggesting that Mr. Fan and Ms. Zou exercised supervisory authority over Chulaizhadao's employees would be conclusory and speculative, as there is no evidence offered to support this conclusion.

The remaining substantial-continuity factors also work against Plaintiffs.  As to the seventh factor, Plaintiffs have not provided any evidence as to the working conditions at Chulaizhadao, so a fact-finder would not be able to determine whether Chulaizhadao and SSQ used the same jobs under the same working conditions.  The eighth and ninth factors are not met because, although Plaintiffs allege that Chulaizhadao "uses [SSQ's] old equipment to produce substantially the same menu as [SSQ], consisting of Japanese sushi and Sichuan barbecued meats," there is no evidence in the record to support this allegation.  ACC ¶¶ 140, 153.  As such, a reasonable juror would be unable to find that "the same machinery, equipment, and modes of production" were used, and that Chulaizhadao "produce[d] the same product" as SSQ.  See Xue Ming Wang, 262 F. Supp. 3d at 89.

---

[9] The Court notes that at the Bankruptcy Adversary Proceeding, Plaintiffs argued that Mr. Fan's debts in bankruptcy should not be discharged because of "his current ownership, management, and daily operation of the [Chulaizhadao] restaurant; . . . his use of the Food Service Establishment License issued to [SSQ] to conduct business as [Chulaizhadao]; or . . . his use of the alias 'Ricky' when working at [Chulaizhadao] restaurant."  Fan, 656 B.R. at 674.  The Court also notes, without considering whether this finding has preclusive effect, that the Bankruptcy Court found that "Plaintiffs offered no documentary evidence concerning [Mr.] Fan's ownership interests in" Chulaizhadao.  Id. at 689.

In sum, Plaintiffs have only produced evidence barely satisfying two out of the nine factors for successor liability under the substantial-continuity test.  See Battino, 861 F. Supp. 2d at 404.    Plaintiffs have not met their burden to show that there is a genuine issue of material fact as to whether Chulaizhadao is SSQ's successor, let alone a successor that assumed the liabilities for wage-and-hour claims against SSQ.  Based on the record, a jury could not find successor liability under either test.  The Court therefore respectfully recommends that Chulaizhadao's motion as to Plaintiffs' FLSA and NYLL claims against it be granted, and that Plaintiffs' claims under the FLSA and the NYLL against Chulaizhadao be dismissed.[10]

### C.    NYDCL Claim

Although the Successor Defendants mentioned Plaintiffs' NYDCL claim in their pre-motion conference letter, see ECF No. 143, Plaintiffs correctly argue that the Successor Defendants did not move for summary judgment on Plaintiffs' NYDCL claim.  See Pls.' Opp. Mem. L. at 8.

The Court respectfully recommends that the Successor Defendants be permitted to move for summary judgment on Plaintiffs' NYDCL claim within 30 days of the adoption of this report and recommendation, should it be adopted, because it is likely that such a motion would succeed for the same or similar reasons that Plaintiffs failed to offer evidence to support their successor-liability theory.  There would be little utility in going forward as to a claim for which there appears to be so little evidence.

---

[10] Plaintiffs only brought FLSA and NYLL claims against the Original Defendants and Chulaizhadao, not against Ms. Jin.  See ACC ¶¶ 164-207.

## IV.    CONCLUSION

For the reasons stated above, the Court respectfully recommends that the Successor Defendants' motion for summary judgment be granted in part and denied in part.  First, the Court respectfully recommends that the Successor Defendants' motion for summary judgment as to Plaintiffs' retaliation claims against Mr. Fan be denied for lack of standing.  (This is not a recommendation as to whether, if Mr. Fan had moved for summary judgment, such a motion should or should not have been granted.)  Second, the Court respectfully recommends that the Successor Defendants' motion for summary judgment as to Plaintiffs' FLSA and NYLL claims against Chulaizhadao be granted, and that the FLSA and NYLL claims against Chulaizhadao be dismissed with prejudice.  Third, the Court respectfully recommends that the Successor Defendants be permitted to move for summary judgment on Plaintiffs' NYDCL claim within 30 days of the adoption of this report and recommendation, should it be adopted.

## V.    OBJECTIONS

This report and recommendation will be filed electronically.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b)(2).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to timely file objections will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).

The Court will mail a copy of this report and recommendation and the docket sheet to Defendants Shang Shang Qian at 3634 Union Street, Flushing, New York 11354 and at 29 New York Avenue, Westbury, New York 11590; and Zhaorui Fan at 215 Clinton Road, Garden City, New York 11530.

The Clerk of Court is also respectfully directed to update Defendant Shang Shang Qian's address on the docket.  See ECF No. 146 ¶ 9.


Dated:  Brooklyn, New York
        August 15, 2025

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge